**Harlan K. SIMONDS, Jr., Plaintiff,**

v.

**GUARANTY BANK & TRUST CO. and James E. Smith, Comptroller of the Currency, Defendants.**

**Civ. A. No. 74–1105–K.**

United States District Court, D. Massachusetts.

Dec. 6, 1979.

4. A notice of appeal in this case was filed on October 11, 1979.

Edward H. Comer, Bruce J. Terris, Washington D.C., Charles D. Bent, Fitchburg, Mass., Patricia G. Curtin, Stephen Moulton, Moulton & Looney, Boston, Mass., for plaintiff.

Herrick & Smith, William Shields III, Boston, Mass., for Guaranty Bank & Trust Co.

Charles K. Mone, Asst. U. S. Atty., Boston, Mass., for USA.

## Memorandum

KEETON, District Judge.

### I.

In this action, liability of the defendant Guaranty Bank & Trust Co. to the plaintiff in some amount is and always has been undisputed. The controversy is over the amount due, which (apart from claims for interest and attorneys fees) turns on the appraised value of 402 shares of stock in the First National Bank of Winchendon as of December 4, 1972, the date of a Winchendon shareholders' meeting authorizing, over plaintiff's dissent, consolidation of the Winchendon bank with the defendant bank. By letters dated February 1, 1974, the Comptroller of the Currency notified the plaintiff and the defendant bank that plaintiff's stock had been appraised at $358.79 per share ($144,233.58 for 402 shares). Now, seven years after the stockholders' meeting and more than five years and 76 docket entries[1] after the filing of this action seeking review of the Comptroller's finding, this court has allocated sufficient time to this among the numerous cases in its backlog to go only as far toward resolution of this controversy as determining, in a memorandum and order of October 11, 1979, that the Comptroller used an impermissibly rigid formula and his decision was "not in accordance with law," as that phrase is used in 5 U.S.C. § 706(2)(A).

The Comptroller and the plaintiff now ask the court to proceed itself to determine the value of the stock rather than remanding to the Comptroller. Plaintiff also asks the court to award interest and attorneys fees. The defendant Guaranty Bank & Trust Co. argues that the court must remand, and requests an opportunity to file a

---

1. The docket entries record, among other things, the filing of 15 motions, 18 briefs, and 8 orders.

brief in opposition to the claim for interest and attorneys fees.

## II.

■ The defendant bank's position that the court lacks jurisdiction to determine the value of the stock, and therefore must remand to the Comptroller, has merit. *Cf. Camp v. Pitts*, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973) (appropriate standard of judicial review of decision of Comptroller under 12 U.S.C. § 27 denying national bank charter is whether decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; *de novo* hearing not authorized). The court cannot, even at the Comptroller's invitation, exercise the discretionary function of appraisal that by statute—12 U.S.C. § 214a—is committed exclusively to the Comptroller.

The court may, however, fashion its orders in this case with a view to advancing a "quality of coordination [of court and agency action], and not merely of review." *Braniff Airways, Inc. v. Civil Aeronautics Board*, 126 U.S.App.D.C. 399, 414, 379 F.2d 453, 468 (D.C.Cir. 1967). By coordinated actions, perhaps it will be possible to move this case on its way toward a just and lawful termination at a less leisurely pace than its past procedural history reflects. Consistently with the aim of coordination, reviewing courts have discretion to limit the scope of proceedings on remand. *Id.* In this instance it is appropriate to make clear that, on remand, the Comptroller will not be required to take additional evidence; he may, if in his discretion he so chooses, proceed to make a finding of value of the plaintiff's shares of stock, as of December 4, 1972, on the basis of the present record and in accordance with this court's order of October 11, 1979. It will be so ordered, unless the case is earlier terminated as a result of proceedings in accordance with Parts IV and V of this memorandum.

## III.

■ The controversy in this case is limited to a question of amount within a finite range. The three values to which the Comptroller gave equal weight were:

$212.66 per share ($85,489.32 for 402 shares);

$408.70 per share ($164,297.40 for 402 shares);

$455.00 per share ($182,910 for 402 shares).

A fourth value referred to in the record is the amount for which the defendant bank sold what would have been the plaintiff's stock in the consolidated bank had he exchanged his 402 shares for that stock—the amount of $159,393 ($396.50 per share). The Comptroller's figure, reached by application of an impermissibly rigid formula, was $358.79 per share, or $144,233.58 for 402 shares. Although the parties may have argued for positions more widely separated, any realistic appraisal of probable outcome must now range no more widely than the highest and lowest of all these figures.[2] Thus, aside from claims for interest and attorneys fees, the difference between the amounts due according to the most extreme arguments that might now be defensible is $97,420.68 (the difference between $182,910 for 402 shares at $455 per share and $85,-489.32 for 402 shares at $212.66 per share).

The particular circumstances of this case relating to investment returns and interest claims might have the result of increasing somewhat the different economic consequences of different potential legal outcomes of the case. Defendant bank has had the use of assets equal to the appraised value of the 402 shares of stock at least since it received the proceeds of the sale of the stock on or about March 16, 1973. Plaintiff contends that he is entitled to an award of interest and attorneys fees, as well as the appraised value of the stock. If defendant bank contends that it is not accountable in any way—by an allowance of interest, or a restitutional award, or oth-

---

**2.** Indeed, the defendant bank argued before the Comptroller that the value of plaintiff's stock was between $236.33 and $268.33 per share ($95,006 to $107,870 for 402 shares), significantly in excess of the lowest of these figures. Administrative Record at 183.

erwise—for its use of assets equal to the appraised value of the stock during the years this controversy has lingered unresolved, then the economic significance of the difference between the legal positions of the parties may be substantially greater than $97,420.68. It may also be noted that if there is controversy over accountability for the use of funds held by defendant bank throughout this period, it creates an incentive for defendant bank to resist early disposition of this case, either by settlement or by final adjudication, and may have the effect of widening the gulf between the parties as the controversy lingers longer. Also, if the rate of accountability is lower than the expected rate of return from investment, that too is an incentive for defendant bank to resist early disposition.

Even the maximum potential economic significance of the outcome of this litigation, however, probably is and will continue to be less than litigation costs. Plaintiff's most recent memorandum, filed November 18, 1979, requests an award of interest and attorneys fees and states that "the value of attorney and bank analyst fees incurred in challenging the Comptroller's valuation" totals "at least $52,000." Of course, this assertion may be contested, but if it is proved and if defendant bank has used services of equal value in defending, the parties have already expended more than $100,000 just in relation to the court proceeding, and the end of the road is not in sight. Moreover, this calculation does not include either the costs to the parties of the proceeding before the Comptroller, or the costs to the public of all the public resources committed and yet to be committed to the resolution of this controversy.

Courts and agencies must, of course, remain open for the resolution of controversies that parties cannot resolve by agreement. Given an overloaded docket, however, a court must also be concerned that its limited resources not be wastefully spent in ways that do not promote either the legitimate interest of parties or the public interest in prompt and evenhanded administration of justice. A court must be concerned that its practices and procedures promote settlement—and preferably early settlement—of those cases in which settlement is mutually advantageous to the parties who are locked in controversy, as well as to the public who must provide resources for disposition of the controversies that are not settled. With the benefit of hindsight, one can see that the present case is probably such a case. Indeed, almost certainly it is such a case unless to one party or both some fundamental principle is at stake, overriding the economic interests directly and indirectly involved. From an overall perspective, taking account of the total economic interests of both parties, the economic stakes at issue here include the appraised value of the 402 shares of stock and the use of assets of that value over the years since December 4, 1972. From that same overall perspective, the net amount of stakes that will be left to be allocated between the parties in accordance with the final judgment will be reduced substantially because of the sum of the litigation costs borne by the parties—reduced by combined costs that may be considerably in excess of $100,000. Thus, it is clear that, unless overriding issues of principle are at stake, the parties have had, and even at this advanced stage still have, a mutual interest in prompt settlement.

Of course, circumstances may create a disincentive for one party to make any concessions toward settlement, in which event the other may regard the only possible settlement as more objectionable on grounds of principle than paying its share of the costs of litigation that, from an overall perspective of the combined interests of the parties, is extraordinarily wasteful. It may be that for a reason such as this no intervention by the court will forestall a protracted future of appeals, reviews, and remands, before this controversy comes to a still distant end. Rather than accepting such a prospect with equanimity, however, the court must at least seek to bring about an earlier just and lawful disposition. It would be difficult to imagine a clearer need than appears here for judicial intervention to hasten disposition, while at the same

time safeguarding the legitimate claims of the parties in controversy. What is less clear is how the court may properly and effectively act either to bring about an earlier disposition or to encourage and aid the parties to do so by agreement.

## IV.

Even without an order of this court, Fed. R.Civ.P. 68 authorizes the defendant in this action to make an offer of judgment that, if not accepted, lays the foundation for an assessment of costs against the offeree if the judgment finally obtained by the offeree is not more favorable than the offer.

The purpose of the rule is to encourage settlements and avoid protracted litigation. 12 C. Wright and A. Miller, Federal Practice and Procedure § 3001 (1973). Though Rule 68 may be seen as both very limited and somewhat lacking in evenhandedness, since it provides only for an offer by the defendant, it has nevertheless been defended as a fair and useful rule.

> Although the privilege of an offer of settlement is extended only to the party defending against a claim, it furnishes a just procedure to all parties concerned. It is fair to the claimant because it does the defending party no good to make an offer of judgment that is not what the claimant might reasonably be expected to recover; he will not free himself of the costs if the judgment recovered is more than the offer. It is certainly fair to the defending party because it allows him to free himself of the court costs by offering to make a settlement. It is of great benefit to the court because it encourages settlements and discourages vexatious suits and thus diminishes the burden of litigation.

*Id.* (footnotes omitted).

The lack of duality—the absence of a corresponding right for the plaintiff to make a formal offer—may also be defended if no more is at stake than "costs" in the limited sense referred to in Rule 68.[3] Those costs are ordinarily assessed against the losing party as a matter of course, and it might be thought that providing specially for assessing costs against a defendant for failing to accept a formal offer from plaintiff would do no more than add another reason for an assessment that would have been made in any event when the plaintiff obtained the judgment. If a sanction beyond awarding or denying "costs" in this limited sense were at stake, however, lack of duality would take on added significance. In that context, lack of duality would be especially relevant to the present case for the reason, noted in Part III of this opinion, that it may well be that circumstances of this case create an incentive for the defendant bank to resist early disposition of this controversy by all legitimate means available. May the court properly fashion an order that provides for formal offers of settlement by both parties, and provides, if settlement is not effected, for sanctions beyond "costs" against whichever party's offer is substantially out of line with the final judgment? That question will not be addressed in this memorandum.

## V.

Attached to this memorandum as Exhibit A is a "Memorandum and Draft Settlement Procedures [Agreement and] Order." The plaintiff and the defendant bank will be directed to confer with respect to whether they wish to enter into and file, on or before January 17, 1980, a Settlement Procedures Agreement, either in the form appearing in Exhibit A or in some different form. If agreement is not reached, each may, on or before January 28, 1980, file a brief addressing the following questions:

(1) Should the court enter a Settlement Procedures Order? If so, on what terms?

---

**3.** In general, federal courts are empowered to exercise discretion in awarding or denying costs. Fed.R.Civ.P. 54(d); 10 C. Wright and A. Miller, Federal Practice and Procedure § 2668 (1973). Indeed, Rule 68 is by nature a restriction of that discretion since it mandates an award of costs when its terms are met. *See Mr. Hanger, Inc. v. Cut Rate Plastic Hangers, Inc.*, 63 F.R.D. 607 (E.D.N.Y.1974) (Re, J., sitting by designation).

(2) Should partial summary judgment be entered for plaintiff, under Fed.R.Civ.P. 56(d),[4] to the extent of the minimum amount that might be found as the appraised value of the plaintiff's 402 shares of stock in the First National Bank of Winchendon on December 4, 1972? If so, what is that amount, and should the partial summary judgment direct immediate payment of that amount?

(3) Is plaintiff entitled to interest? If so, on what sum, from what date, and at what rate (or at what rates for what periods)?

(4) Is plaintiff entitled to attorneys fees? If so, for what services during what period of this controversy?

### Exhibit A

### Memorandum and Draft Settlement Procedures [Agreement and] Order

This memorandum states and briefly explains my aims in placing before you the draft "Settlement Procedures [Agreement and] Order" attached.

We all know that a very high percentage of cases on the court docket are destined for settlement and that customarily many of them are settled on the eve of trial, after substantial public and private resources have already been committed to the dispute resolution process. My principal aim is to find a way for the parties and the court, in cooperation, to identify these cases early and cause prospects for settlement to be fully explored at a time (1) when the stakes available for allocation among the parties are larger, simply because they have not been diminished by substantial litigation costs, and (2) when it is still possible to minimize the incidental but often very significant indirect costs of unresolved controversy. A second aim, less significant in my view because I believe it will apply to fewer cases, is to identify and give attention to those cases, if there are such, that will otherwise fail to settle at all only because prospects for early settlement are not fully explored and settlement becomes impossible as positions harden and investments in the controversy increase.

One reason early settlement may not occur is that each party is unwilling to initiate discussions for fear that doing so will be interpreted as a sign of weakness. Probably a far more significant obstacle to early settlement, however, is that each party lacks confidence that the other will make its genuine "best" offer before the eve of trial, or even until a time after trial has commenced. One possible way of overcoming this obstacle is to fashion an arrangement—by agreement or by court order—under which sanctions based on a wide discrepancy between a settlement demand or offer and the outcome of trial create a substantial economic incentive to each party to make the "best" offer early, with the expectation of standing fast unless appraisal of the case changes thereafter. The attached draft has been prepared with the purpose of aiding the parties to create such an incentive structure for early settlement.

Finally, I state explicitly two points as to which I hope not to be misunderstood.

(1) It is not my aim to exert pressure on any party to settle when settlement is not in that party's own best interests, as judged from that party's own perspective. Courts should be open and accessible, and it is my hope that the procedures proposed here will help to make them more so, not less so.

(2) I do not want to impose additional burdens on parties or counsel. My hope, instead, is that your giving some time and attention to this proposal will in the end save far more time.

The following procedure is adopted for the submission of settlement offers and demands by the parties:

1. On or before _____, (a) the plaintiff will submit to the Clerk in a sealed envelope a settlement demand setting forth

---

4. "If . . . judgment is not rendered upon the whole case . . ., the court . . . shall if practicable ascertain what material facts exist without substantial controversy. . . . It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages . . . is not in controversy, and directing such further proceedings in the action as are just."

the amount the plaintiff would accept in full settlement of all claims against the defendant in this action, and (b) the defendant will submit to the Clerk in a sealed envelope a settlement offer setting forth the amount that the defendant would be willing to pay in full settlement of all claims by the plaintiff against the defendant in this action.

2. After the settlement offer and settlement demand have been received, the Clerk will open the sealed envelopes and mail a copy of the demand and the offer to the opposing party. Unless otherwise stipulated by the parties, no copy of the offer and demand will remain in the Clerk's file.

3. If the defendant's settlement offer equals or exceeds the plaintiff's settlement demand, the plaintiff and the defendant will settle the case at the amount of the defendant's offer less one half of the amount by which the offer exceeds the demand, if any.

4. If the offer and the demand do not overlap, the offer and demand will remain firm for a period of 10 days from the date the copies of the demand and offer were mailed to the parties by the Clerk. During this period either party may accept the other party's offer or demand. The parties may also negotiate such other acceptable settlement amount as may be mutually agreeable.

5. During the 10-day period defined in paragraph 4, the plaintiff may lower the demand or the defendant may raise the offer by giving written notice to the Clerk and to the other party. The offer or demand contained in such amendment shall remain firm (subject only to further amendment) for a period of 5 days from the date the copy of the amendment was served upon or mailed to the opposing party. During any such 5-day period, the latest offer or demand of the party not filing the amendment shall also remain firm (subject only to further amendment lowering the demand or raising the offer).

\* 6. If the offer and the demand do not overlap and the parties have not settled the case within the period during which offers and demands remain firm under paragraph 5, the Clerk will appoint a mediator, whose fee will be taxed as costs. The mediator will function for 30 days and will file a final report with the Clerk within 30 days after the end of such period. The role of the mediator will be to explore with the parties the bases of their offer and demand and the potential for arriving at some accommodation. The mediator may confer with the parties separately or jointly as seems appropriate at various stages of the 30-day negotiation period.

\* 7. If the parties are unable to settle the case pursuant to the above procedure and the case goes to trial and formal judgment, a liquidated sum of ____ dollars, on account of added nontaxable costs and expenses of litigation, will be awarded as follows:

(a) If final judgment is for the defendant or is against the defendant but in an amount less than 75% of the plaintiff's final settlement demand during the period defined in paragraphs 4 and 5, the liquidated sum stated in this paragraph will be awarded against the plaintiff and, if the plaintiff recovers a judgment, will be an offset reducing that judgment.

(b) If final judgment is against the defendant in an amount more than 125% of the defendant's final settlement offer during the period defined in paragraphs 4 and 5, the liquidated sum stated in this paragraph will be awarded against the defendant, as an addition to the judgment that would otherwise be entered.

_____

Clerk

Approved by Counsel;

_____

\* The court does not expect to include paragraphs 6 and 7 in the Settlement Procedures Order unless the parties have agreed to their inclusion. The parties may agree to omit these paragraphs, to modify them, or to establish some other incentive for the submission of a fully considered demand and a fully considered offer on the specified date. The court will also consider requests of the parties by agreement, or the motion of either party, for entry of a Settlement Procedures Order of terms different from this draft.

Counsel for Plaintiff

Counsel for Defendant
Approved for entry on _____

United States District Judge