Mark H. BERENS, Plaintiff,

v.

Eugene LUDWIG, Comptroller of the Currency, and Marquette Bank, N.A., as Successor in interest to Marquette Bank Shakopee, N.A., Defendants.

No. 96 C 3534.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 13, 1997.

Mark H. Berens, Richard M. Carbonara, Altheimer & Gray, Chicago, IL, for Plaintiff.

James Michael Kuhn, U.S. Attorneys Office, Chicago, IL, Kenneth J. Lennon, Office of the Comptroller of Currency, Washington, DC, for Defendants.

### MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is defendant Comptroller of the Currency's motion to dismiss plaintiff Mark H. Berens' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(b). For the reasons that follow, the court denies the motion to dismiss, but grants the motion for summary judgment.

### I. BACKGROUND

Plaintiff Mark H. Berens ("Berens") owned 33 shares of stock in Marquette Bank Shakopee, N.A. ("bank"), making him a minority shareholder in the bank. Marquette Bancshares, Inc. ("MBI"), was the bank's majority shareholder. Some time prior to January 1, 1995, MBI decided to consolidate the bank with 10 other banks. Berens voted against the consolidation, to no avail. On January 1, 1995, MBI consolidated the banks, receiving 100 percent of the consolidated institution's stock. MBI gave Berens $12,071 per share of stock that he owned, but Berens felt that this price was too low.

Accordingly, Berens sought an appraisal of his stock by the Comptroller of the Currency ("Comptroller") pursuant to 12 U.S.C. § 215(d), which allows any interested party in a bank consolidation to request that the Comptroller appraise a dissenting shareholder's stock. The Comptroller's appraisal is final and binding on all parties.

Both Berens and MBI submitted information in support of their positions with respect to the value of the stock. The Comptroller considered the parties' materials, and conducted his own analysis. In his appraisal, the Comptroller considered the stock's market value, adjusted book value, and investment value. He gave no weight to the market value, finding that the bank's stock traded too infrequently and sporadically for a true and accurate market value to exist. He gave greater weight to the investment value than the adjusted book value, such that his final appraisal reflected a three-to-one weighting of investment value to adjusted book value. That is, the appraised value equalled 75 percent of the investment value plus 25 percent of the adjusted book value.

Using this methodology, the Comptroller determined that Berens' stock was worth $13,034 per share as of January 1, 1995. However, Berens' believes his stock is worth about $16,700 per share. Consequently, Berens filed this lawsuit against the Comptroller pursuant to the Administrative Procedure Act, 5 U.S.C. § 702, alleging that the Comptroller's appraisal was conducted in an arbitrary and capricious manner, and asking the court to set aside the appraisal. The Comptroller has moved to dismiss Berens' cause of action against the Comptroller, or alternatively, has moved for summary judgment on Berens' cause of action.[1]

### II. DISCUSSION

Berens has two primary quarrels with the Comptroller's appraisal of his stock. He contends that the Comptroller failed to adjust its calculations to account for about $5,000,000 in excess capital that the bank carried. He also contends that the Comptroller should have

---

1. Berens also named as a defendant Marquette Bank, N.A., the result of the January 1, 1995, bank consolidation. However, Marquette Bank, N.A., was dismissed as a party defendant on November 8, 1996.

used a discounted cash flow analysis to estimate the bank's value. Berens asserts that these errors by the Comptroller resulted in an arbitrary and capricious appraisal that undervalued his stock.

The Comptroller moves to dismiss Berens' action for failure to state a claim. He argues that because the Comptroller was not required to use any particular methodology in appraising the stock's value, Berens cannot bring a claim based on the Comptroller's decision not to follow Berens' suggested approaches. In the alternative, the Comptroller argues that even if Berens could bring a cause of action based on the Comptroller's failure to use a specific appraisal methodology, the Comptroller's methodology was not arbitrary and capricious. Therefore, the Comptroller contends he is entitled to summary judgment on Berens' cause of action.

## A. *Motion to dismiss*

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Cromley v. Board of Educ. of Lockport*, 699 F.Supp. 1283, 1285 (N.D.Ill. 1988). If, when viewed in the light most favorable to the plaintiff, the complaint fails to state a claim upon which relief can be granted, the court must dismiss the case. *See* FED. R. CIV. P. 12(b)(6); *Gomez v. Illinois State Board of Educ.*, 811 F.2d 1030, 1039 (7th Cir.1987). However, the court may dismiss the complaint only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

The Comptroller contends that under *Beerly v. Department of the Treasury*, 768 F.2d 942 (7th Cir.1985), *cert. denied*, 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 301 (1986), this court cannot tell the Comptroller what methodology he should have used in conducting his appraisal of Berens' stock. According

to the Comptroller, the essence of Berens' complaint is that the Comptroller should have used valuation methods other than the one he chose to use. Thus, the Comptroller argues, Berens' complaint asks the court to dictate the Comptroller's choice of appraisal methodology, which neither Berens nor the court can do. Therefore, Berens' cause of action should be dismissed.

*Beerly* is the preeminent case on the Comptroller's choice of appraisal methodology. In *Beerly*, the Comptroller considered four measures of a stock's value: book value, adjusted book value, market value, and investment value. *Beerly*, 768 F.2d at 945. The Comptroller gave no weight to book value or market value, finding neither to be a reliable indicator of the value of the stock. He averaged adjusted book value and investment value to arrive at his appraised value of the stock. *Id.*[2] The plaintiff challenged the method, arguing that it led to a price that was too low. *Beerly*, 768 F.2d at 944. The district court rejected the plaintiff's challenge, so he appealed. *Id.*

The Seventh Circuit noted that the methodology used by the Comptroller had been frequently criticized. *Id.* at 945. However, it found that this was not a reason to reject the methodology, stating that "the fact that the Comptroller was following a conventional approach goes far to shield his results from judicial invalidation. It is not for a reviewing court to tell an administrative agency to defy the conventional wisdom, to innovate, to be daring." *Id.* at 945–46.

After examining the comptroller's appraisal methodology, the court rejected the plaintiff's argument that the Comptroller should have used market value in his appraisal, finding that the Comptroller's procedure using an average of adjusted book value and investment value was "defensible." *Id.* at 947. The court also held that the Comptroller was not required to give any weight to the appraisal made by the plaintiff's appraiser. *Id.*

The Comptroller contends that *Beerly* precludes this court from deciding whether the

---

**2.** This method of appraisal is known as the Delaware Block Method. *See, e.g., Keeffe v. Citizens and Northern Bank,* 808 F.2d 246, 248 (3d Cir. 1986); *Boone v. Carlsbad Bancorporation, Inc.,* 972 F.2d 1545, 1553 n. 4 (10th Cir.1992).

Comptroller should have used a particular methodology instead of the one that he used. This court does not read *Beerly* as so absolute. The *Beerly* court stated that the fact that the Comptroller used a conventional appraisal went far in shielding his results from review, not that it precluded review. Moreover, the court then proceeded to evaluate the merits of the Comptroller's appraisal, rather than simply ceasing its review after finding that the Comptroller used a conventional method of appraisal. In fact, the court questioned one aspect of the Comptroller's valuation, but ultimately found that if the Comptroller had made an error, it was trifling. *Id.* at 948.

In short, the Seventh Circuit went beyond deciding whether the Comptroller had used a particular appraisal methodology, and determined whether the Comptroller's appraisal methodology was reasonable. The reasonableness of the Comptroller's appraisal methodology is not a question to be decided on a motion to dismiss, but is more appropriately a question for summary judgment. *See, e.g.,* *Simonds v. Guaranty Bank & Trust Co.,* 492 F.Supp. 1079, 1080 (D.Mass.1979); *Yabsley v. Conover,* 644 F.Supp. 689, 691 (N.D.Ill.1986); *Keeffe,* 808 F.2d at 248 (all deciding whether the Comptroller's appraisal was reasonable on motions for summary judgment).

Accordingly, the court denies the Comptroller's motion to dismiss, and will address the merits of the Comptroller's appraisal in the context of the Comptroller's motion for summary judgment.

### B. *Motion for summary Judgment*

A motion for summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden is on the moving party to show that no genuine issues of material fact exist. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Once the moving party presents a *prima facie* showing that it is entitled to judgment as a matter of law, the party opposing the motion may not rest upon the mere allegations or denials in its pleadings but must set forth specific facts showing that a genuine issue for trial exists. *Anderson,* 477 U.S. at 256–57, 106 S.Ct. at 2514; *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 620 (7th Cir.1989). All reasonable factual inferences must be viewed in favor of the non-moving party. *Holland v. Jefferson Nat'l Life Ins. Co.,* 883 F.2d 1307, 1312 (7th Cir. 1989).

■ In this motion for summary judgment, the overarching question is whether the Comptroller's appraisal was reasonable. *See Yabsley,* 644 F.Supp. at 693. The court considers "whether the appraisal was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* (citing *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971)).

■ In considering whether the Comptroller's appraisal was reasonable, the court is resolving a legal question; it must determine on the basis of the administrative record whether the Comptroller's appraisal procedure was arbitrary or capricious. *Yabsley,* 644 F.Supp. at 693. Consequently, this court will examine the reasoning behind the Comptroller's appraisal in some depth.

■ The Comptroller stated that his appraisal uses three measures of value: market value, investment value, and adjusted book value, all as of the date of the consolidation on January 1, 1995. (Admin. R. Ex. 28 at 1.)[3] The Comptroller stated that he selected valuation methods that provide a market value for the shares being valued. He stated that market value is the price at which a willing buyer and willing seller would exchange a share of stock in an "arm's length" transaction; and that market value reflects an investor's perception and valuation of a bank as a going concern. (*Id.* at 2.) Howev-

---

3. This and the following references are to the   Administrative Record.

er, because the bank's stock was not listed on a major exchange and was infrequently traded, and therefore had no active market, the Comptroller found that he could not establish a reliable market value to appraise the stock. (*Id.* at 3.)

The Comptroller stated that investment value is a method of valuation that attempts to assess the earnings capacity of the bank and then apply the market perception of the value of banking organizations with similar earnings potential. (*Id.*) Determining investment value is a two-step process that requires the Comptroller to establish a peer group comprised of banking institutions with similar earnings potential for which market data is readily available, and to analyze the historical earnings data of the bank. (*Id.*)

The Comptroller determines investment value by multiplying the bank's earnings per share by the average price per earnings ratio for the banks in the peer group; this yields a market-based price per share, or investment value, for the bank. (*Id.* at 4.) The Comptroller determined that the investment value of a share of the bank's stock was $12,018.50.

Adjusted book value is derived by multiplying the book value of a bank's assets per share by a ratio of market price to book value for a peer group. (*Id.*) Book value is determined by dividing total equity capital by number of shares of common stock outstanding. (*See id.*) The application of the market price to book value ratio measures the premium or discount to book value that investors attribute to the condition and prospects of similarly situated banking organizations. (*Id.*) Since the bank had capital of $12,464,000 and 1,000 shares outstanding, its book value per share was $12,464. (*Id.* at 5.) Multiplying the book value by the peer group's average ratio of market price to book value of 1.29 yielded an adjusted book value of $16,078.56 per share. (*Id.*)

The Comptroller then considered the materials submitted by Berens, primarily consisting of the appraisal of Berens' stock by a private appraiser. (*Id.*) The Comptroller described in detail the methodology used by the private appraiser. In particular, the private appraiser took into account the fact that the bank had excess capital of $4,900,000

when compared to regulatory capital requirements and the amount of capital held by the institutions in the peer group. It then applied the discounted cash flow method of appraisal, also adding $4,900 per share of implied excess capital to the present value calculations. (*Id.* at 5–6.) The Comptroller rejected the private appraiser's methods, stating that the Office of the Comptroller does not employ a discounted cash flow approach or excess capital methodology for determining the value of dissenting shareholder stock. (*Id.* at 6.) However, the Comptroller noted that the peer groups used by the Comptroller and the private appraiser contained many of the same banking institutions. (*Id.*)

The Comptroller then reviewed his determinations of investment value and adjusted book value. He stated that investment value provides a reasonable estimate of the value to investors of a share in the future earnings of the bank, and therefore is income-based and values the bank as a going concern. (*Id.* at 8–9.) In contrast, the adjusted book value is asset-based, and is more reflective of the value of the bank in voluntary liquidation. (*Id.*) The Comptroller stated that he gives more weight to the investment value method, since banks' earnings are readily available to the public and historically are the primary factor used by investors in deciding the value of a bank's stock. (*Id.* at 9.) Thus, the Comptroller gave investment value to adjusted book value a three-to-one weighting. That is, he added 75 percent of the investment value of $12,018.50 to 25 percent of the adjusted book value of $16,078.56 to arrive at an appraised value of $13,033.52. (*Id.* at 8–9.)

Berens feels this value is too low. He first contends that the Comptroller should have used the widely accepted discounted cash flow method of appraisal, as did his private appraiser and MBI's appraiser. Berens contends that the Comptroller explicitly refused to consider his and MBI's appraisers' findings, and simply stated that the Comptroller's established methodology does not use discounted cash flow analysis.

Berens is factually incorrect in his assertion that the Comptroller explicitly refused to consider the other appraisers' findings. In fact, the Comptroller explained in detail the discounted cash flow approach used by the other appraisers. Nonetheless, he chose to use his version of the Delaware Block method, and stated that the Comptroller does not use the discounted cash flow approach to valuing stock.

The court sees nothing unreasonable about the Comptroller's methodology. As the court in *Beerly* stated, "the fact that the Comptroller was following a conventional approach goes far to shield his results from judicial invalidation." *Beerly*, 768 F.2d at 945. Moreover, the Comptroller applied the same methodology in this case as he did in *Beerly*, and of which the *Beerly* court expressly approved. *See also Yabsley*, 644 F.Supp. at 693–95; *Keeffe*, 808 F.2d at 250; *Boone*, 972 F.2d at 1553–54 (all holding that Delaware Block method of appraisal, or some variation of it, was a reasonable method of appraisal). Thus, "mere use of the Delaware Block Method does not render the appraisal arbitrary and capricious." *Boone*, 972 F.2d at 1553.

Moreover, the Comptroller explained in great detail the basis of his appraisal, the calculations he used to reach his valuations, and his reasons for using his methodology. (*See* Admin. R. Ex. 28 at 1–9 and attachments.) For example, the Comptroller fully explained why he used investment value and adjusted book value as the two benchmarks of the stock's value, and why he weighted investment value three times greater than adjusted book value. (*See* Admin. R. Ex. 28 at 2–5, 8–9.) The Comptroller's explanation seems eminently reasonable.

Because of the thoroughness with which the Comptroller set forth the basis of and reasoning behind his appraisal, this case is far different from *Simonds v. Guaranty Bank & Trust Co.*, 492 F.Supp. 1079 (D.Mass.1979). In *Simonds*, the Comptroller simply based his appraisal on book value, market value, and investment value, and gave equal weight to the three considerations, but gave no explanation about why he

gave the considerations equal weight. *See id.* at 1080.

The district court there found that the weighting of the various elements of value called for the exercise of judgment, and that it was inappropriate for the Comptroller to apply a rigid formula giving equal weight to all three factors. *Id.* at 1084. The court found that because the Comptroller gave the factors equal weighting without explaining his reason for doing so, and because of substantial disparity between investment value and the other two factors, it appeared that the Comptroller was applying a rigid formula rather than exercising his judgment. *Id.* The court therefore vacated the Comptroller's appraisal. *Id.*

In this case, in contrast, the Comptroller gave careful consideration to the different factors, and explained his reasons for weighting investment value more heavily than adjusted book value. Thus, it is clear that the Comptroller did not apply a rigid formula, as Berens contends, but was exercising his judgment in giving his appraisal.

Berens also argues that the Comptroller failed to consider the fact that the bank had excess capital of about $5,000,000, which is a relevant factor that the Comptroller is required to consider. Berens contends that the bank paid grossly inadequate dividends for 16 years, forcing the minority shareholders to suffer years of underpaid dividends, which resulted in the accumulation of the excess capital. Berens contends that because of the Comptroller's refusal to recognize these facts, Berens will not receive his share of the value of the excess capital accumulation from the forced sale of his shares.

The court notes again that the Comptroller recognized that Berens' private appraiser took into account the excess capital in reaching his appraised value of the stock. However, the Comptroller stated that he did not employ the excess capital method of appraisal. Therefore, the Comptroller did not totally disregard the possible existence of excess capital, as Berens suggests.

More important, the Comptroller's calculations accounted for the excess capital, at least indirectly. The Comptroller's determi-

nation of adjusted book value was based on the bank's total equity capital of $12,464,000, about $5,000,000 of which is the purported excess capital. Thus, the adjusted book value figure is based on total capital, including the excess capital. Obviously, if the bank has excess capital compared to other banks, all other things being equal, its adjusted book value should be higher than that of the other banks. Consequently, the court finds that the Comptroller considered the excess capital by considering total capital, and therefore did not fail to consider a relevant factor.

Moreover, the court in *Beerly* directly addressed the same argument and rejected it. The plaintiff in *Beerly* complained that his bank paid lower dividends than comparable banks, and apparently felt that the Comptroller should have taken that into account in appraising the plaintiff's stock. *Beerly,* 768 F.2d at 948. The Seventh Circuit stated that it did not understand this argument, since the bank's paying lower dividends "would just go to increase the bank's capital, and hence book value, and hence the valuation of" the plaintiff's stock. *Id.*

The court finds that the Comptroller sufficiently considered the relevant factors, including the amount of capital of the bank, in appraising Berens' stock. As the Eleventh Circuit noted, the court "do[es] not assess whether the appraisal was correct or utilized the best methods[, but] .... determine[s] only whether it was reasonable." *Lewis v. Clark,* 911 F.2d 1558, 1563 (11th Cir.1990). Based on the administrative record, the court finds that the Comptroller's appraisal of Berens' stock was reasonable.

Accordingly, the court grants the Comptroller's motion for summary judgment.

### III. *CONCLUSION*

For the foregoing reasons, the court denies defendant Comptroller of the Currency's motion to dismiss plaintiff Mark H. Berens' complaint for failure to state a claim, but grants defendant Comptroller of the Currency's motion for summary judgment, and enters judgment in favor of defendant Comp-

troller of the Currency and against plaintiff Mark H. Berens.