**MEAD CORPORATION et al., Plaintiffs,**

v.

**UNITED STATES et al., Defendants.**

**Civ. A. No. 79–1668.**

United States District Court,
District of Columbia.

May 30, 1980.

James F. Davis, Alan M. Grimaldi, Howrey & Simon, Washington, D. C., for plaintiffs.

Vito J. DiPietro, Dept. of Justice, Peter E. Derry, William P. Dale, Washington, D. C., for defendants.

## MEMORANDUM

JOHN LEWIS SMITH, Jr., District Judge.

Plaintiffs, Mead Corporation and Mead Digital Systems, Inc. (Mead), bring this action against the United States, the Secretary of Defense, and the A.B. Dick Company (A.B. Dick) for determination of ownership of United States Patent No. 3,596,275, issued to Richard G. Sweet, the named inventor. Jurisdiction is premised upon 28 U.S.C. §§ 1331 (federal question), 1338 (patents), 1361 (mandamus), 2201 (declaratory judgment), 2202 (other relief), 2410 (actions affecting property on which the United States has a lien), 35 U.S.C. § 261 (ownership, assignment of patents), 40 U.S.C. § 471 (Federal Property and Administrative Services Act), and 5 U.S.C. §§ 701–706 (Administrative Procedure Act). The matter is presently before the Court on A.B. Dick's motion to dismiss, federal defendants' motion to dismiss or in the alternative, for summary judgment, and plaintiffs' motion for summary judgment.

Mr. Sweet has long been associated with Leland Stanford Junior University as a research associate. He was with the University in the early 1960s, when Stanford entered into a contract with the Army Signal Corps, Contract No. DA–36–039–SC–87300, to conduct research in electronic countermeasures. In the course of that research, Mr. Sweet developed the invention at issue, an ink-jet printing device. The contract, when entered into, contained a PATENTS RIGHTS (LICENSE) (JAN. 1961) clause, Armed Services Procurement Regulations (ASPR) § 9 107.2(b), which determined pat-

ent rights over inventions made under the contract. This provision was later amended to contain an updated version of the same clause. ASPR § 9–107.2(b) (APR. 1962). When Mr. Sweet completed work on the invention in 1963, Stanford's patent policy allowed a research associate to keep all rights to his invention unless otherwise required by contracts and grants for sponsored research and subject to any contract obligations owed a research sponsor. Mr. Sweet advised Stanford orally and in writing that he would file a patent application covering his invention. In 1963, Mr. Sweet entered into a license agreement with Minneapolis-Honeywell Regulator Company, which in turn filed the patent application on the Sweet invention naming Mr. Sweet as owner. In 1964 and 1965, licenses were conveyed to the government, pursuant to the requirements of ASPR § 9–107.2(b). Stanford neither claimed title to the patented invention nor did it compel Mr. Sweet to assign his rights to Stanford. The University advised Honeywell that Mr. Sweet held title to the invention, subject to the non-exclusive license held by the United States. In 1971, the Sweet patent issued, and in September of 1972, Mr. Sweet conveyed his interest in the patent to the A.B. Dick Company, along with his interest in the corresponding foreign patents and the invention claimed under those patents. Plaintiffs are in the business of manufacturing high speed ink-jet printers, and A.B. Dick has sued Mead in a case transferred to the Southern District of Ohio, C.A. No. C–3–79–177, for infringement of the patent it obtained from Mr. Sweet.

Mead brings this suit (1) to obtain a declaration that all right, title, and interest in the Sweet invention is vested in the United States, or if not vested, that it should be assigned to the United States by A.B. Dick, (2) to compel the Secretary of Defense to recognize that title to the patent is vested in the United States and therefore under the custody of the Defense Department, (3) to compel the Secretary either to publish the patent or dedicate it to the public, and (4) to obtain a declaration that A.B. Dick has no ownership in the Sweet patent, and

should deliver the letters patent to the Defense Department, and dismiss all infringement charges brought against Mead.

Plaintiffs do not dispute the fact that section 1331 does not in itself create substantive rights or causes of action, *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 129, 94 S.Ct. 1002, 1004, 39 L.Ed.2d 209 (1974), but only confers jurisdiction on the district courts to hear certain cases that are supported by an independently created substantive cause of action. The same proposition applies to sections 1338 (patents), 1361 (mandamus), 2201 (declaratory judgment), and 2201 (other relief). Section 2410 grants courts jurisdiction over cases involving property on which the United States has or claims "a mortgage or other lien." The complaint in this case states that the United States' alleged interest in the Sweet patent is a title interest, not a mortgage or other lien. Section 2410 is therefore inapplicable to the present action. *Bertie's Apple Valley Farms v. United States*, 476 F.2d 291, 292 (9th Cir. 1973).

Plaintiffs contend that their substantive cause of action is conferred by the APA grant of review of agency action, 5 U.S.C. § 702. This section also waives any claim the United States might have to sovereign immunity. *Nuclear Data, Inc. v. Atomic Energy Commission*, 344 F.Supp. 719, 721 (N.D.Ill.1972). The duties plaintiffs allege have not been performed are those owing under 40 U.S.C. § 486 (Supp. I 1977), wherein Congress authorized the President to prescribe policies and directives needed to effectuate the Act and authorized the Administrator to prescribe regulations to the same end. The regulations supporting plaintiffs' claims concern the government's obligations to dedicate or license inventions owned by the government. Plaintiffs' entire theory of their case turns on whether Mr. Sweet's invention was owned by the government from the moment of discovery.

Government ownership is to be determined by a reading of the contract provisions regarding patent rights. Even though a body of federal common law regarding

patents has developed, if parties choose to contract with respect to patent rights, it is the contract that controls. The contract entered into between Stanford and the Signal Corps at the time Mr. Sweet developed the jet-ink device contained the standard patent rights clause required by the Army, embodying the government's then current policy:

> In order to take advantage of the incentives implicit in the patent system and to secure American industry's unreserved participation in military research and development under both contracts and subcontracts, while acquiring the rights necessary for the Government freely to carry out its programs, the Department of Defense generally obtains on behalf of the Government a comprehensive license of free use but does not require that full title to the new inventions be assigned to the Government. ASPR § 9–107.1(a).

■ The applicable patent-rights clause thus gave title to the contractor and a non-exclusive, royalty-free, irrevocable license to the United States.

> The Contractor agrees to and does hereby grant to the Government an irrevocable, nonexclusive, and royalty-free license to practice, and cause to be practiced by or for the United States Government, throughout the world, each Subject Invention in the manufacture, use, and disposition according to law, of any article, material, and in the use of any method. ASPR § 9–107.2(b)(1) (APR. 1962).

The clause also established that if the contractor or those claiming under the contractor did not apply for a patent, then the United States was to be notified so that it might file in its own right.

> [I]n the event the Contractor, or those other than the Government deriving rights from the Contractor, elects not to continue prosecution of any such United States patent application filed by or on behalf of the Contractor, the Contractor shall so notify the Contracting Officer not less than sixty days before the expiration of the response period and, upon written request, deliver to the Contract-

ing Officer such duly executed instruments (prepared by the Government) as are deemed necessary to vest in the Government the Contractor's entire rights, title, and interest in such Invention. ASPR § 9–107.2(d)(iv) (APR. 1962).

When Mr. Sweet developed his invention at Stanford it was University policy to allow research associates to file for patents on their own behalf and to retain ownership of any invention they made.

> Each [Research Associate] shall be permitted to keep all rights to inventions he may make, except in cases where other arrangements are required by contracts and grants for sponsored research. However, it is the University's wish that the faculty member be prepared to make inventions to which he holds patent rights available to the public on a non-exclusive basis. Stanford Patent Policy, 1.

Stanford understood that any such inventions were subject to the license to be conveyed to the United States. The United States made clear during the period at issue that the mechanism Stanford used to apply for a patent was "of no critical concern" so long as the United States received its license.

It is evident that even though the project under which Mr. Sweet developed the ink-jet device was government funded, title did not accrue first to the government, subject to later divestment. Rather, the government demanded only a license in the invention from the outset, subject to a later claim on the patent right in the event the contractor did not file or cause to be filed a patent application. In the case of Mr. Sweet's invention, Stanford "caused to be filed" a patent application, and as noted, the mechanism of that filing was of little consequence to the government. In January of 1964 and November of 1965, licenses naming Mr. Sweet as inventor were transmitted to the Department of the Army. The Army acknowledged the licenses in January of 1965 and had them recorded with the Patent Office.

Title to the invention was, therefore, first in Mr. Sweet and not in the United States.

The United States asked and received no more than the licenses required under ASPR § 9–107.2(b). Each of the statutory bases for jurisdiction submitted by plaintiffs necessarily fails in light of the fact that these statutes regulate government handling of property it *already* owns. There being no subject matter jurisdiction, this action is dismissed. An order consistent with this memorandum follows.