**MEAD CORPORATION and Mead Digital Systems, Inc., Appellants,**

v.

**UNITED STATES of America, et al.**

No. 80–1642.

United States Court of Appeals, District of Columbia Circuit.

Argued April 8, 1981.

Decided May 29, 1981.

---

James F. Davis, Cincinnati, Ohio, with whom Charles N. Shane, Jr., Dayton, Ohio, was on the brief, for appellants.

Vito J. DiPietro, Atty., Dept. of Justice, Washington, D. C., with whom Alice Daniel, Asst. Atty. Gen., Charles F. C. Ruff, U. S. Atty. and Herbert Berl, Atty., Dept. of Justice, Washington, D. C., were on the brief, for appellee, United States of America.

Keith V. Rockey, Chicago, Ill., with whom Peter E. Derry, Washington, D. C., was on the brief, for appellee, A.B. Dick Co.

Before BAZELON, Senior Circuit Judge, MacKINNON and MIKVA, Circuit Judges.

Opinion PER CURIAM.

**PER CURIAM:**

In 1978 A.B. Dick Company ["A.B. Dick"] brought suit charging Mead Corporation ["Mead"] with infringement of A.B. Dick's patent rights in its ink-jet printer [the "Sweet invention"].[1] Thereafter, Mead brought the present suit for declaratory relief, contending that the United States Department of Defense [the "Defense Department" or the "Secretary"], and not appellee A.B. Dick, is the rightful owner of the Sweet invention. The district court, 490 F.Supp. 405, dismissed Mead's suit for lack of subject-matter jurisdiction. Finding no justiciable federal question, we affirm.

The invention emerged in 1963 from research at Stanford University funded by the Defense Department. The inventor, Richard G. Sweet, was a Stanford research scientist. His 1962 employment contract permitted him to take title to his inventions, provided that he: (i) grant Stanford a royalty-free license; and (ii) assist Stanford in complying with its contractual obligations to the government.[2] The 1961 research contract between Stanford and the Defense Department included a patent rights clause specified by regulation, 32 C.F.R. § 9–107.2(b) (1961). That clause provides, in pertinent part:

> if the Contractor [the University] specifies that a . . . patent application shall be filed, the Contractor shall file or cause to be filed such application. . . . [I]f the contractor decides not to file or cause to be filed such application, the Contractor shall so notify [the government] . . . .
>
> \*    \*    \*    \*    \*    \*
>
> and convey all right, title and interest [to the government].[3]

---

1. A.B. Dick filed suit in United States District Court in Chicago in June, 1978, seeking damages and injunctive relief. The Chicago action was eventually transferred to United States District Court in Dayton, Ohio, where it was consolidated with an action for declaratory relief brought by Mead.

2. The employment agreement was memorialized in a 1963 contract, Joint Appendix ["J.A."] 358–59.

3. In fuller detail, the Armed Services Procurement Regulation § 9.107 provides, in pertinent part, that:

> (c) The Contractor [University] shall furnish to the Contracting Officer [government representative] . . . information and reports concerning Subject Inventions [including such

Dr. Sweet completed his ink-jet invention in 1963, and undertook its commercial development. Licenses, which named Sweet as grantor, were transmitted to the Defense Department in 1964 and 1965.[4] In 1971, the Sweet patent was issued, and one year later, Sweet sold his patent to a licensee, A.B. Dick.

Appellees contend that the government received all that it bargained for in the patent rights clause: a royalty-free license. But according to appellant, the clause contemplated only two possibilities: (i) title to the patent could be held by the University, provided that a royalty-free license were

granted to the government; or (ii) title could be held by the government.[5] In no event would the *inventor* retain title. Thus, appellant seeks a declaration that neither Sweet nor his assignee, A.B. Dick, hold title to the patent which appellant has allegedly infringed.

Appellant invokes various jurisdictional statutes, *e. g.*, 28 U.S.C. § 1331 (general federal question); 28 U.S.C. § 1361 (mandamus); 28 U.S.C. § 2201 (declaratory judgment). We agree with the district court that none of these provides an independent basis of federal jurisdiction.[6] In addition,

---

information as] ... whether or not a United States patent application ... has been or will be filed by or on behalf of the Contractor....
(d) In connection with each Subject Invention referred to in (c)(i) above, the Contractor shall do the following:
(i) If the Contractor specifies that a United States patent application claiming such Invention will be filed, the Contractor shall file or cause to be filed such application in due form and time; however, if the Contractor, after having specified that such an application would be filed, decides not to file or cause to be filed such application, the Contractor shall so notify the Contracting Officer at the earliest practicable date and in any event not later than eight months after first publication, public use or sale;
(ii) if the Contractor specifies that a United States patent application claiming such Invention has not been filed and will not be filed (or having specified that such an application will be filed thereafter notifies the Contracting Officer to the contrary), the Contractor shall:
(A) inform the Contracting Officer in writing at the earliest practicable date of any publication of such Invention made by or known to the Contractor or where applicable, of any contemplated publication by the Contractor, stating the date and identity of such publication or contemplated publication; and
(B) convey to the Government the Contractor's entire right, title, and interest in such Invention by delivering to the Contracting Officer *upon written request* such duly executed instruments (prepared by the Government) of assignment and application, and such other papers as are deemed necessary to vest in the Government the Contractor's right, title, and interest aforesaid, and the right to apply for and prosecute patent applications covering such Invention throughout the world, subject, however, to the rights of the Contractor in foreign applications as provided in (c) below, and subject further to the reservation of a nonexclusive and royalty-

free license to the Contractor (and to his existing and future associated and affiliated companies, if any, within the corporate structure of which the Contractor is a part) which license shall be assignable to the successor of that part of the Contractor's business to which such Invention pertains; ...
(iv) in the event the Contractor, or those other than the Government deriving rights from the Contractor, elects not to continue prosecution of any such United States patent application filed by or on behalf of the Contractor, the Contractor shall so notify the Contracting Officer not less than sixty days before the expiration of the response period and, *upon written request*, deliver to the Contracting Officer such duly executed instruments (prepared by the Government) as are deemed necessary to vest in the Government the Contractor's entire right, title, and interest in such Invention and the application, subject to the reservation as specified in (d)(ii) above; ...
(emphasis supplied).

**4.** J.A. 361-64. The Defense Department acknowledged these licenses, J.A. 87.

**5.** *See* note 3 *supra*. Appellant contends that unless patent applications were "filed or caused to be filed" by the University, title to the invention must be transferred to the Defense Department. The district court found that a filing by the *inventor* could qualify as an instance where the Contractor/University "caused [an application] to be filed." We do not reach this issue, except to note that this ambiguity contributes to the Secretary's discretion in construing and enforcing the regulation, *see* p. 1053 *infra*.

**6.** Absent a discrete federal question or a duty arising under federal law, these provisions do not provide for federal jurisdiction. *See Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 94 S.Ct. 1002, 39 L.Ed.2d 209 (1974).

appellant claims that the Secretary violated the Administrative Procedure Act, 5 U.S.C. § 702, by failing to comply with the Defense Department's own regulation, *see, e. g., Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859 (D.C.Cir.1970).

Even as read by appellant, the patent rights clause specified by the regulation is not self-enforcing. It does not effect a transfer of title in an invention from the University (or inventor) to the government. Instead, it ensures that the government is given notice of actions taken by the University, and it describes a mechanism by which the government, under certain circumstances, can obtain title.[7] Thus, appellant's APA claim is that the Secretary, by failing to exploit the patent clause's provisions, violated a regulation with the "full force and effect of law," *Paul v. United States*, 371 U.S. 245, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963).[8]

Appellant, however, points to no federal law to guide us in our review of the Secretary's action.[9] The regulation itself requires only the inclusion of the patent rights clause in the Army's research contracts.[10] The Secretary complied with this obligation. The regulation does not otherwise define the Secretary's duties.

The statement of purpose preceding the relevant provisions offers only general guidance:

In order to take advantage of the incentives implicit in the patent system and to secure American industry's unreserved participation in military research and development under both contracts and subcontracts, while acquiring the rights necessary for the Government . . . the Department of Defense generally obtains . . . a comprehensive license of free use but does not require that full title to the new inventions be assigned to the Government.[11]

The regulation appears to leave the Secretary some discretion in striking the balance between the "incentives . . . in the patent system"[12] and the needs of the Defense Department. Questions of enforcement policy fall well within that discretion. *See Kixmiller v. Securities and Exchange Comm'n*, 492 F.2d 641 (D.C.Cir.1974).

Although appellant has identified common law contract claims once available to

---

Appellant invoked other jurisdictional statutes as well, *e. g.*, 28 U.S.C. § 1338 (patents); 28 U.S.C. § 2410 (property on which the United States has a lien); 40 U.S.C. § 471 et seq. (Federal Property and Administrative Services Act ["FPAS"]). Where only title to a patent is in dispute, section 1338 does not provide a federal forum. Section 2410 grants jurisdiction only where the United States has a "mortgage or other lien," as opposed to a title interest, *see Bertie's Apple Valley Farms v. United States*, 476 F.2d 291, 292 (9th Cir. 1973). Finally, FPAS applies only to "surplus property." Appellant has not alleged jurisdictional facts sufficient to bring this action within that rubric, *see* 40 U.S.C. § 472(g).

7. *See* note 3 *supra* (after receiving notice from Contractor that no patent application has been filed, government can obtain title to invention "by written request").

8. Appellees rely on *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), for their contention that the APA provides no basis for federal jurisdiction. However, appellant

here does not rely solely on the APA. Instead, it contends that the Secretary, by violating his own regulation, has acted "not in accordance with law," 5 U.S.C. § 706. Appellant's APA claim thus raises a federal question—albeit a frivolous one, *see infra*—for purposes of 28 U.S.C. § 1331. *Cf. Esquire v. Ringer*, 591 F.2d 796, 807 (D.C.Cir.), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1217, 59 L.Ed.2d 456 (1979) (Leventhal, J., concurring) (violation of regulation raises federal question directly under § 1331).

9. *Cf. City of Santa Clara v. Andrus*, 572 F.2d 660 (9th Cir.), *cert. denied*, 439 U.S. 859, 99 S.Ct. 177, 58 L.Ed.2d 167 (1978) (without judicially enforceable rule or standard, complaint raises no justiciable controversy).

10. 32 C.F.R. § 9–107.1 (1961).

11. 32 C.F.R. § 9–107.1(a) (1962).

12. *Id.*

the Secretary,[13] it has not stated a colorable claim of unlawful action by a federal agen- cy or official. Accordingly, the judgment of the district court must be affirmed.

---

13. Appellant has not stated when the Secretary should have sought to enforce the patent rights clause. Presumably, the Secretary's alleged error occurred in 1963, or 1964, when he accepted the royalty-free license from Sweet without protest. Appellees thus suggest an additional jurisdictional ground for dismissal: appellant's failure to comply with the 6-year statute of limitations, see 28 U.S.C. § 2401.

Appellant responds that it failed to comply because it was unaware, until recently, of the precise terms of the contracts between Stanford and the Defense Department and between Stanford and Dr. Sweet. However, the relevant portion of the Stanford-Defense Department contract was the patent rights clause—a provision specified by a published regulation. And, according to appellant's own reasoning, the Stanford-Sweet contract could not alter the rights and duties of the Secretary under the regulation.