Joseph DUGAN, Plaintiff,

v.

**Arch RAMSAY, Director of the Office of Personnel Management, Defendant.**

Civ. A. No. 82–0282 S.

United States District Court,
D. Rhode Island.

March 29, 1983.

Joseph Dugan, pro se.

Lincoln C. Almond, U.S. Atty. by Everett Sammartino, Ass't U.S. Atty., Providence, R.I., for defendant.

## OPINION AND ORDER

SELYA, District Judge.

This is an action raising intricate questions of administrative law, and is before the Court on cross-motions for summary judgment.

The plaintiff, Joseph Dugan, a seasoned member of the District of Columbia and Rhode Island bars, sought to become a federal administrative law judge ("ALJ"). On November 7, 1980, he filed an application with the Office of Administrative Law Judges ("OALJ") of the Office of Personnel Management ("OPM") for placement onto a register from which government agencies fill vacant ALJ positions. After reviewing the plaintiff's application, OALJ notified him on January 27, 1981 that he was ineligible for listing on the register because of his apparent failure to satisfy certain OALJ threshold standards, including those dictating the extent of trial practice which a lawyer in private practice must have as a prerequisite to ALJ eligibility.[1] Subsequent to this initial denial, the plaintiff sought review from OPM's Administrative Law Judge Rating Appeals Panel ("Panel"). By letter dated March 23, 1982, the Panel affirmed OALJ's decision, holding that plaintiff did not qualify for eligibility as an ALJ. With the count no balls and two strikes, the plaintiff took a round-house swing at OALJ by filing this suit on April 23, 1982.

The gravamen of the action is a challenge to the validity of the criteria used in determining eligibility for the ALJ registration list. For a non-government lawyer, the OALJ requires that the attorney accumulate, within seven years prior to the date of application, four hundred days of preparation of cases and their presentation before trial courts of unlimited and original jurisdiction (or in lieu thereof, equivalent administrative law experience). The plaintiff attacks this requirement as not being rationally related to determining whether or not one would serve competently as an ALJ. He further avers that the criterion discriminates against private practitioners.

The defendant answered and moved for summary judgment. The defendant's motion asserts that the action of OALJ was neither arbitrary nor capricious; that the requirement in question is rationally related to ALJ selection; and that it does not deny the plaintiff's rights to due process and to equal protection of the law. Plaintiff thereupon cross-moved for *brevis* disposition.

After receipt of the motion papers, briefs, affidavits and administrative record, the Court requested the parties to address the jurisdiction of this Court to hear an appeal from the Panel decision. The plaintiff asserted that the decision is reviewable under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, and that in any event, this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1361. The defendant contended that the decision is not reviewable. The Court, having found the briefs somewhat less than illuminating, then invited further memoranda addressed to the perceived jurisdictional issue. The plaintiff did little more than reassert his previously-formulated position; the government did not deign to submit further authorities. Having received only meagre assistance from the parties, it falls to the Court to attempt virtually unaided to piece together this jurisdictional tangram. To do so in an orderly fashion, the Court must first set forth a brief summary of the convoluted structure of the Civil Service Reform Act ("CSRA"), P.L. 95–454, codified at 5 U.S.C. § 1101 *et seq.* (Supp. III 1979).

## I. THE CIVIL SERVICE REFORM ACT

The Civil Service Reform Act was the first significant change in the federal civil

---

1. United States Office of Personnel Management Announcement No. 318, at 5 *reprinted in* Administrative File of Joseph Dugan at 275 (hereinafter Record).

service system since its inception in 1883. S.Rep. No. 95–969, 95th Cong., 2d Sess. 1 (hereinafter "S. Rep."), *reprinted in* 1978 U.S. Code Cong. & Ad.News 2723, 2723. Congress, in enacting the CSRA, recognized that the Civil Service Commission ("Commission") was unable to perform its dual role of both managing the civil service system and protecting the numinousness of the merit system. S.Rep. at 3–5, 1978 U.S.Code Cong. & Ad.News at 2725–27. CSRA thus disbanded the Commission and replaced it with two new entities: OPM and the Merit System Protection Board ("MSPB").

OPM was assigned the managerial functions of the Commission. 5 U.S.C. § 1103; S.Rep. at 5, 1978 U.S. Code Cong. & Ad. News at 2727. Among these functions was the responsibility for conducting competitive examinations and determining eligibility for government positions (including the position of ALJ). *See* 5 U.S.C. § 1104(a)(2).

Before passage of CSRA, the task of preserving the merit principles in government service was lodged in the Commission's Board of Appeals and Review. *See, e.g., Etelson v. Office of Personnel Management,* 684 F.2d 918, 920 (D.C.Cir.1982); *American Federation of Government Employees v. Hoffman,* 543 F.2d 930, 948 (D.C.Cir.1976), *cert. denied,* 430 U.S. 965, 97 S.Ct. 1645, 52 L.Ed.2d 356 (1977); *see also Hall v. United States Civil Service Commission,* 533 F.2d 695, 698 (D.C.Cir.1976). CSRA transferred these responsibilities to MSPB. 5 U.S.C. §§ 1205, 2301. To assist MSPB in this noble endeavor, CSRA created the Office of Special Counsel within the MSPB. *Id.* at § 1204.

The initiative lies in the first instance with the employee or applicant for employment. If the individual believes a merit principle has been violated, the employee or applicant must seek administrative redress either by lodging a complaint with the Special Counsel or by appealing directly to the MSPB. *See infra.*

Only after these administrative remedies have been exhausted, may an individual seek redress in court.

CSRA provides:

Any employee or applicant for employment adversely affected or aggrieved by a final order or decision of the Merit Systems Protection Board may obtain judicial review of the order or decision.

5 U.S.C. § 7703(a)(1).

The pre-CSRA law provided that an appeal from final orders of the now-extinct Board of Appeals and Review was to be taken to the appropriate United States District Court. *See Etelson v. Office of Personnel Management,* 684 F.2d at 920; *Glenn v. Merit Systems Protection Board,* 616 F.2d 270, 271 (6th Cir.1980); *In Re Christian,* 606 F.2d 822, 822 (8th Cir.1979). CSRA has altered the review format, however, and provides, with certain exceptions not relevant to the instant action,[2] that appeals from the MSPB are to be heard and determined by the United States Court of Claims or by an appropriate circuit court of appeals. 5 U.S.C. § 7703(b)(1). With this background firmly in mind, the Court must address whether or not the decision complained of in the case at bar is appealable to the MSPB. If so, then this Court must not usurp MSPB's primary jurisdiction. *Cf. Etelson v. Office of Personnel Management,* 684 F.2d at 923–25.

## II. JURISDICTION OF MSPB

■ The MSPB, as delineated above, has jurisdiction over allegations of prohibited personnel practices either (i) brought before it by direct appeal pursuant to 5 U.S.C. § 7701, or (ii) brought before it by the Special Counsel in accordance with 5 U.S.C. § 1206(c)(1)(B). Direct appeal will lie only "from [an] action which is appealable to the Board under any law, rule or regulation." 5 U.S.C. § 7701(a). No such law, rule or regulation is apparent to the Court which would render an eligibility-status dispute of

---

2. Judicial review of MSPB decisions anent claims of discrimination pursuant to § 717 of Civil Rights Act of 1964, 42 U.S.C. § 2000e–16, § 6(d) of the Fair Labor Standards Act of 1938, 29 U.S.C. § 206(d), or §§ 12 and 15 of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 631, 633a, are to be taken to the appropriate United States District Court. 5 U.S.C. § 7703(b)(2).

the genre here at issue directly appealable to MSPB as of right.[3] The availability or unavailability of MSPB review via the Special Counsel route is not, however, as clear-cut.

The authority and responsibilities of the Special Counsel are staked out by the provisions of 5 U.S.C. § 1206. The Special Counsel is directed to "receive any allegation of a prohibited personnel practice", *id.* at § 1206(a)(1), and thereupon to "investigate the allegation to the extent necessary to determine whether there are reasonable grounds to believe that a prohibited personnel practice has occurred." *Id.*[4] If such a determination is affirmatively made by the Special Counsel, and if he further determines that "corrective action" is required, *id.* at § 1206(c)(1)(A), the Special Counsel's duty is then to report the determination "together with any findings or recommendations" to, *inter alia,* MSPB and OPM. *Id.* If remedial action is not then implemented "after a reasonable period", the Special Counsel may petition MSPB to consider the matter. *Id.* at § 1206(c)(1)(B).

Upon close perscrutation of the pleadings in the case at bar, the plaintiff at bottom asserts that OALJ acted unfairly in failing properly to evaluate all of the trial experience which he had detailed in his application. He claims abridgement of equal opportunity for access into the selection process for a position within the competitive service, alleging that "certain practices and procedures [and] interpretations of policies [relating to the OALJ experience requirement and the rating thereof] . . . are irrational, arbitrary and capricious." Plaintiff's Additional Memorandum at 1. If these allegations describe a "prohibited personnel practice", then a complaint to the Special Counsel would plainly lie under 5 U.S.C. § 1206.

The term "prohibited personnel practice" is the subject of express statutory definition. *See* 5 U.S.C. § 2302. 5 U.S.C. § 2302(a)(1) simply declares that any activity described in 5 U.S.C. § 2302(b) shall be deserving of the label. While the proscriptions of this last-mentioned statute are far-flung, 5 U.S.C. § 2302(b)(11) is of particular interest as regards the case at bar. This proviso outlaws any personnel action "if the taking of or failure to take such action violates any law, rule or regulation implementing, or directly concerning, the merit system principles contained in [5 U.S.C.] § 2301 . . .". It is clear from the statutory context that not only government employees, but also applicants for employment, are entitled to the prophylaxis of the law. For example, an "appointment" is specifically denominated as a "personnel action". *See* 5 U.S.C. § 2302(a)(2)(A)(i). Likewise, "a decision concerning . . . education or training if the education or training may reasonably be expected to lead to an appointment" is classified as a personnel action. *See* 5 U.S.C. § 2302(a)(2)(A)(ix). It requires no

---

**3.** Since the appointment is one within the competitive service, *see* 5 U.S.C. § 2101, a colorable argument for direct appealability can perhaps be made prescinding from the investigation of ALJ candidates. 5 C.F.R. § 930.203(b). This investigation gives OPM the opportunity to assess the applicant's suitability and qualifications. 5 C.F.R. §§ 731.201, .301(a)(2). In so doing, OPM must weigh and evaluate whether applicant's "conduct" may be "reasonably expected to interfere with or prevent effective performance in the position." 5 C.F.R. § 731.-202(a)(1). While 5 C.F.R. § 731.202(b) sets out factors which may be considered, these are not exclusive. Thus, if an applicant's alleged lack of experience is viewed as "conduct" which would "prevent effective performance", and this in turn is viewed as a judgment of unsuita-

bility pursuant to 5 C.F.R. § 731.202, then there would be a direct appeal to MSPB by virtue of 5 C.F.R. § 731.401(a). This tautology leaves much to be desired, however, as there is a qualitative difference between experience and training and the sort of sociopathic behavior upon which 5 C.F.R. § 731.202 is, on its face, focussed; thus, there is serious doubt as to whether such experience and training (or the lack thereof) can comprise "conduct" within the ambit of the regulations.

**4.** 5 U.S.C. § 1206(c)(3) also authorizes the Special Counsel to investigate any violation of a law, rule or regulation which does not constitute a prohibited personnel practice and if necessary report such violations to the head of the appropriate agency.

citation of authority to belabor the obvious: this plaintiff was seeking an appointment.[5]

From the foregoing, it follows that Dugan's grievance is one addressed to a prohibited personnel practice if transgressions of the merit principles are involved. Those principles are codified in 5 U.S.C. § 2301. Several of the principles may be invoked in this instance. It will suffice for purposes of this exegesis, however, to cite but two. First, the principles ordain that:

> Recruitment should be from qualified individuals from appropriate sources in an endeavor to achieve a work force from all segments of society, and selection and advancement should be determined solely on the basis of relative ability, knowledge, and skills, after fair and open competition which assures that all receive equal opportunity.

5 U.S.C. § 2301(b)(1).

In this case, Dugan asseverates in substance, using language so harsh as to eliminate any uncertainty, that the selection process, as applied to him, did not operate "on the basis of relative ability, knowledge and skills"; that the competition was not "fair and open"; and that he was not accorded "equal opportunity". He has, therefore, in essence charged a violation of the cardinal merit principle; ergo, his complaint is that a prohibited personnel practice was perpetrated.

Secondly, the sweep of the merit principles insures that:

> All employees and applicants for employment should receive fair and equitable treatment in all aspects of personnel management . . . with proper regard for their privacy and constitutional rights.

5 U.S.C. § 2301(b)(2).

The very heart of Dugan's case, adverted to in fifteen separate places in his six-page complaint in this action, is that the policies and practices against which he so robustly rails are in derogation of the due process and equal protection safeguards of the Fifth Amendment. The conclusion that plaintiff's umbrage arises out of prohibited personnel practices is thus cemented by·his repeated charges that his treatment *qua* applicant was in blatant disregard of the rights and privileges secured to him by the United States Constitution.

Based upon the foregoing explication, it appears to the Court that plaintiff, subsequent to the rejection of his appeal by the Panel, should have filed a charge with the Special Counsel as provided in 5 U.S.C. § 1206. He has not done so. It is fundamental that a person is not, under ordinary circumstances, entitled to judicial review under 5 U.S.C. § 704 for a supposed wrong until his prescribed administrative remedies have been exhausted. *Weinberger v. Salfi,* 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975); *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–464, 82 L.Ed. 638 (1938); *Red River Transport & Development Co., Inc. v. Federal Aviation Administration,* 630 F.2d 592, 595 (8th Cir.1980); *Uniroyal, Inc. v. Marshall,* 579 F.2d 1060, 1064 (7th Cir.1978). This tenet is of equal force where Congress, in its wisdom, has in an intermediate instance deferred a matter for further consideration to an independent administrative arm, rather than to the courts.[6] *Babcock & Wilcox Co. v. Marshall,* 610 F.2d 1128, 1137–38 (3rd Cir.1979); *American Fed'n of Gov't Employees v. Resor,* 442 F.2d 993, 994 (3d Cir.1971). Judicial review is, as noted *ante,* ultimately available. No exigent circumstances are present in the case at bar.· Accordingly, the plaintiff has failed to exhaust an available administrative remedy.[7] In

---

**5.** It should also be noted that, at divers junctures, the statute in question specifically refers to "applicants for employment." *See, e.g.,* 5 U.S.C. §§ 2301(b)(2), 2302(b)(9), 7701(a).

**6.** Indeed, observance of the exhaustion doctrine is a matter of constitutional proportions; premature judicial intervention would raise grave questions not only of honoring the Congressional will, but also of the doctrine of the separation of powers. *Babcock & Wilson Co. v. Marshall,* 610 F.2d at 1136 n. 21.

**7.** The plaintiff seeks solace from the D.C. Circuit's opinion in *Etelson v. Office of Personnel Management,* 684 F.2d 918 (D.C.Cir.1982). The issue in *Etelson* was not whether the plaintiff had exhausted all levels of administrative review but whether the plaintiff could raise certain issues for the first time on judicial review of the agency action. In the instant case, the

the absence of such exhaustion, this Court lacks subject matter jurisdiction.[8]

The plaintiff, in response to the Court's jurisdictional inquiry, has cited three cases wherein other district courts have heard and determined appeals from the Panel; and has posited these as precedent for this Court's assumption of jurisdiction. Two of those cases arose prior to the enactment of CSRA, and need not be discussed here.[9]

The final case is *Friedman v. Devine,* C.A.No. 81–756 (D.D.C.1982). The slip opinion filed in *Devine* clearly indicates that subject-matter jurisdiction was not contested by the defendants. *Id.* at 2. From the language of the decision, it can safely be assumed that no advocacy of MSPB jurisdiction was advanced. Thus, to the extent (if at all) that *Devine* stands as a contrary jurisdictional precedent, this Court, for the reasons noted herein, respectfully declines to follow it.[10]

question is not whether the plaintiff can address certain issues at this stage of the litigation but whether the plaintiff has exhausted all available levels of administrative review.

8. It should be noted that, even if the plaintiff had no recourse to MSPB and had therefore exhausted available administrative remedies, the decision by OPM would not *a fortiori* be subject to judicial scrutiny. Absent clear and convincing evidence of Congressional intent to the contrary, final agency actions are normally reviewable. *Southern Railway Co. v. Seaboard Allied Milling Corp.,* 442 U.S. 444, 454, 99 S.Ct. 2388, 2394, 60 L.Ed.2d 1017 (1979); *Morris v. Gressette,* 432 U.S. 491, 501, 97 S.Ct. 2411, 2418, 53 L.Ed.2d 506 (1977); *Abbott Laboratories v. Gardner,* 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967); *Colon v. Carter,* 633 F.2d 964, 966–67 (1st Cir.1980); *Hahn v. Gottlieb,* 430 F.2d 1243, 1249 (1st Cir. 1970); *Robert E. Derecktor, Inc. v. Goldschmidt,* 516 F.Supp. 1085, 1092 (D.R.I.1981); *Simonds v. Guaranty Bank & Trust Co.,* 492 F.Supp. 1079, 1081 (D.Mass.1979). Such contrary intent can be evinced either by an express statutory preclusion of judicial review or by a finding that the action complained of is committed to agency discretion by law. 5 U.S.C. § 701(a). While there is no express denial of judicial review as to an OPM action of the type and kind attacked by the plaintiff, it is at least arguable that such action may well be consigned to agency discretion.

In *Citizens To Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) ("*Overton Park*"), the Supreme Court observed that the agency discretion exception is a narrow one. *Id.* at 410, 91 S.Ct. at 820. The exception is viable only when statutes are drawn so broadly that, in a given instance, there is no law to apply. *Id., citing* S.Rep. No. 752, 79th Cong., 1st Sess. 26 (1945). Although questions abound as to the proper interpretation of this holding, *see, e.g. Natural Resources Defense Council v. SEC,* 606 F.2d 1031, 1043 (D.C.Cir.1979), consensus appears to exist as to the ramifications of *Overton Park.* In *City of Santa Clara v. Andrus,* 572 F.2d 660, 666 (9th Cir.), *cert. denied,* 439 U.S. 859, 99 S.Ct. 177, 58 L.Ed.2d 167 (1978), the Ninth Circuit held that an action is deemed to be committed to agency discretion when the

courts have no standard against which to measure its lawfulness; and that no standard exists if no specific statute limits the agency's discretion to act in the challenged manner. *Accord Suntex Dairy v. Block,* 666 F.2d 158, 164 (5th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 59, 74 L.Ed.2d 62 (1982); *Jaymar-Ruby, Inc. v. FTC,* 651 F.2d 506, 512 (7th Cir.1981); *Mead Corp. v. United States,* 652 F.2d 1050, 1053 (D.C.Cir.1981); *Romero-Barcelo v. Brown,* 643 F.2d 835, 845 (1st Cir.1981), *rev'd on other grounds,* 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982).

The instant case may well present one of those rare circumstances in which there is no law to apply. OPM is empowered to hold tests and appoint qualified individuals to positions as ALJs. 5 U.S.C. § 3105 (Supp. III 1979); 5 C.F.R. § 930.203. These provisions, however, provide no standards by which to measure the validity of OPM judgments anent the eligibility qualifications of ALJ applicants.

9. There is no dispute but that prior to the enactment of the CSRA, jurisdiction over appeals from the now-defunct Board of Appeals and Review (the antecedent soul-mate of today's MSPB) was vested in the district courts. See Part I *supra,* and cases cited therein.

In the instant case, the administrative action was commenced after the enactment of CSRA. Thus, its provisions for judicial review govern and they militate against district court jurisdiction in the instant matter. *See Broadway v. Block,* 694 F.2d 979, 983 (5th Cir.1982); *cf. Glenn v. Merit Systems Protection Board,* 616 F.2d 270, 271 (6th Cir.1980) and cases cited therein.

10. If the Court were to accept, *arguendo,* that OPM's action constitutes final agency action susceptible to judicial review, it would not perforce follow that the district court is the proper forum.

In enacting CSRA, Congress voiced myriad concerns relating to the civil service system. One such concern was the disparate treatment allegedly accorded federal employees in the district courts when decisions of the Commission were appealed. S.Rep. at 63, 1978 U.S.Code

## III. OTHER BASES FOR JURISDICTION

■ Plaintiff also contends that this Court has mandamus jurisdiction pursuant to 28 U.S.C. § 1361. The writ of mandamus is an extraordinary anodyne available only under egregious circumstances manifesting clear illegality. *Cervoni v. Secretary of Health, Education, and Welfare,* 581 F.2d 1010, 1019 (1st Cir.1978); *Association of American Medical Colleges v. Califano,* 569 F.2d 101, 110 n. 80 (D.C.Cir.1978). To obtain a writ of mandamus, the party seeking the writ must show: (i) an undeniable right to the relief sought; (ii) that the defendant has a clear peremptory duty to perform the act in question; and (iii) that no other adequate remedy is available. *United States ex rel. Girard Trust Co. v. Helvering,* 301 U.S. 540, 543–44, 57 S.Ct. 855, 857, 81 L.Ed. 1272 (1937); *Cervoni v. Secretary of Health, Education and Welfare,* 581 F.2d at 1019, *Lovallo v. Froehlke,* 468 F.2d 340, 343 (2d Cir.1972).

■ The plaintiff has, in the case at bar, totally failed to meet these criteria. He has an available administrative remedy (*see* Part II, *ante*). The defendant's duty to act is at best questionable (see n. 8, *supra*); and the lack of statutory standards attendant to the defendant's duty makes this a situation where the duty, even if one exists, cannot be said to be "plainly defined". *Cf. Cervoni v. Secretary of Health, Education and Welfare,* 581 F.2d at 1019–20.

Perhaps most significant, plaintiff has made no colorable showing of entitlement to the requested relief. The Court has here examined the administrative record, and has concluded that the criteria utilized by OALJ, while far from perfect, are rationally related to the goal of obtaining the most qualified individuals for appointment to the position of ALJ. *See, e.g. Ramspeck v. Federal Trial Examiners' Conf.,* 345 U.S. 128, 136–38, 73 S.Ct. 570, 575–576, 97 L.Ed. 872 (1953); *Etelson v. OPM,* 684 F.2d 918, 926–27 (D.C.Cir.1982); *Bromberg v. United States Civil Service Commission,* No. 73–C–537, slip op. at 9 (Mar. 25, 1975 N.D.Ill.), *aff'd mem.,* No. 75–1485 (Dec. 19, 1975, 7th Cir.).

The plaintiff also posits jurisdiction pursuant to 5 U.S.C. § 704 and-or 28 U.S.C. § 1331.

The Supreme Court, in *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), held that the Administrative Procedures Act does not provide an independent basis for subject matter jurisdiction. *Id.* at 104–07, 97 S.Ct. at 983–985. *Accord Falzarano v. United States,* 607 F.2d 506, 509 (1st Cir.1979). Thus, the plaintiff must show that Congress empowered the federal dis-

---

Cong. & Ad.News at 2785. In an effort to cure this perceived problem, Congress provided that orders of the MSPB were to be reviewable only in the Court of Claims or in a Circuit Court of Appeals. 5 U.S.C. § 7703(b) (Supp. III 1979); S.Rep. at 63, 1978 U.S.Code Cong. & Ad.News at 2785. This skirts the issue, however, of whether Congress intended orders of the OPM to be appealable to the district courts (thereby perpetuating the jeopardy of disparate treatment). To be sure, Congress could have expressly declared that orders of the OPM could be appealed only to the Court of Claims or to the circuit courts. The failure, however, to include such language might mean only that Congress failed to consider the issue in precise judicial terms when it drafted 5 U.S.C. § 7703(b). In fact, there is legislative history to indicate that Congress never imagined that a decision by OPM would be final for purposes of judicial review. *Cf.* S.Rep. at 29, 1978 U.S. Code Cong. & Ad.News at 2751.

Given congressional concern over disparate treatment, it would be folly for this Court light-

ly to assume jurisdiction when Congress has manifested a plain intent that district courts should take a reduced role in oversight of the civil service system. This is especially so in the absence of any meaningful distinction, for these purposes, between MSPB and OPM. Both are integrally involved with the oversight of the civil service system, and common sense weighs heavily in favor of comparability of judicial review as to final actions of both agencies. *Cf. Broadway v. Block,* 694 F.2d 979, 983 (5th Cir.1982); *Dearsman v. Kurtz,* 516 F.Supp. 1255, 1259 (D.D.C.1981). Although this point need not be decided here since the instant action is, in the Court's view, susceptible to disposition on other grounds, the combination of the legislative history and of the failure to extend the review scheme of 5 U.S.C. § 7703(b) argues forcibly that OPM personnel actions must either not be final agency action (*see* Part II, *ante*) or in the alternative, must not be subject to judicial scrutiny (*see* n. 8, *supra*).

trict courts to adjudicate the controversy through some statute other than 5 U.S.C. § 704.

The plaintiff claims that this litigation arises under the Constitution or laws of the United States and that this Court has jurisdiction pursuant to 28 U.S.C. § 1331. The plaintiff's constitutional rights have not been violated since the criterion for evaluating ALJ applicants is rationally related to the legitimate goal of OPM. *See Johnson v. Robison,* 415 U.S. 361, 374, 94 S.Ct. 1160, 1169, 39 L.Ed.2d 389 (1974). OPM must, in any sensible view, have considerable freedom to set and to administer criteria to govern eligibility for ALJ service. *Cf. Ramspeck v. Federal Trial Examiners Conf.,* 345 U.S. at 133, 73 S.Ct. at 573–574. Nothing in the record suggests that, in this instance, OPM, acting through the medium of OALJ, has exercised this authority in an arbitrary or capricious manner, or that its determinations vis-a-vis plaintiff are not supported by substantial evidence in the record.

CSRA does not, for the reasons previously stated, afford an independent basis for district court jurisdiction.

Plaintiff has, in the judgment of the Court, failed to establish jurisdiction on any theory. Accordingly, plaintiff's motion for summary judgment is denied; defendant's motion for summary judgment is treated as a motion to dismiss for want of jurisdiction,[11] and is granted.

SO ORDERED.

---

11. A motion for summary judgment is an inappropriate method for contesting want of subject matter jurisdiction. *See Exchange National Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126, 1131 (2d Cir.1976); *Haley v. Childers,* 314 F.2d 610, 613 (8th Cir.1963); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1350, at 547 (1969). Since the Court can address subject matter jurisdiction *sua sponte, Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 278 (1977); *Amfac Mortgage Corp. v. Arizona Mall of Tempe, Inc.,* 583 F.2d 426, 430 n. 5 (9th Cir.1978); *Honneus v. Donovan,* 93 F.R.D. 433, 436 (D.Mass.1982), the Court will treat defendant's motion for summary judgment as a suggestion that this court lacks subject matter jurisdiction. *Mayes v. Gordon,* 536 F.Supp. 2, 4 n. 1 (E.D.Tenn.1981); *Dunlap v. Sears, Roebuck & Co.,* 478 F.Supp. 610, 611 (E.D.Pa.1979); *Grynberg v. B.B.L. Associates,* 436 F.Supp. 564, 565 (D.Colo.1977); *United States v. Maryland Casualty Co.,* 213 F.Supp. 800, 802 (E.D.N.Y.1963).