### SAGOMA PLASTICS, INC. and Anthony Gelardi, Plaintiffs,

v.

### John GELARDI, Defendant.

### No. 04–CV–282–P–S.

United States District Court, D. Maine.

March 10, 2005.

---

James G. Goggin, Verrill & Dana, Portland, ME, for Sagoma Plastics Inc, Anthony Gelardi.

Joseph H. Groff, III, Jensen, Baird, Gardner & Henry, Portland, ME, for John Gelardi.

## ORDER ON DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

SINGAL, Chief Judge.

Before the Court is Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Docket # 5). Defendant asserts that this Court does not have subject matter jurisdiction to hear patent disputes arising under 35 U.S.C. § 116 and therefore Plaintiffs' claim under that federal statute and their pendant state law claim must be dismissed. After reviewing the submissions of the parties, the Court GRANTS the Motion to Dismiss.

The dispute in this case arises over the inventorship of a package for holding multiple media discs such as CDs and DVDs ("the Invention"). Plaintiffs claim that Plaintiff Anthony Gelardi and Defendant John Gelardi jointly developed the Invention while both were employed at Plaintiff Sagoma Plastics, Inc. ("Sagoma"). However, Defendant subsequently accepted employment with another company and thereafter filed a patent application for the Invention (U.S. Patent Application No. 10/259,341) with the United States Patent and Trademark Office ("PTO"). The patent application—which has yet to be approved by the PTO—does not list Anthony Gelardi as an inventor. Plaintiffs ask the Court for a declaratory judgment that Anthony Gelardi is a joint inventor of the Invention. Plaintiffs also assert a pendant state law claim against Defendant for breaching his fiduciary duty to Sagoma by refusing to name Anthony Gelardi as a joint inventor and by failing to assign ownership of the Invention to Sagoma.

■ The sole issue facing the Court in this case is whether federal patent law empowers this Court to determine questions of inventorship prior to the issuance of a patent by the PTO. For the reasons stated below, the Court determines that it has no such power.

Patent law generally requires all joint inventors to be listed on a patent application. *See* 35 U.S.C. § 116. If a patent application incorrectly identifies the inventors, the law provides a process for the correction of such errors:

> Whenever through error a person is named in an application for patent as the inventor, or through error an inventor is not named in an application, and such error arose without any deceptive intention on his part, the Director may permit the application to be amended accordingly, under such terms as he prescribes.

35 U.S.C. § 116. Plaintiffs suggest that this provision allows a district court to issue a declaratory judgment naming the correct inventors of a pending patent. Since such a declaration would require this Court to make a determination of inventorship—a substantial question of federal patent law—jurisdiction would exist under 28 U.S.C. § 1338(a). *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808–809, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (explaining that § 1338(a) jurisdiction applies either "when federal patent law creates the cause of action or . . . the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law.").

Defendant rejects Plaintiffs' interpretation of 35 U.S.C. § 116, arguing that it cannot be interpreted as containing a private right of action and should instead be understood as a grant of exclusive authority to the Director of the PTO. If § 116 does not contain a private right of action, Defendant argues, this Court does not have subject matter jurisdiction to hear Plaintiffs' claims.

■ The question of whether a federal statute that fails to explicitly provide for a private right of action nonetheless contains an implied private right of action is determined by examining Congress' intent in enacting the statute. *See Thompson v. Thompson*, 484 U.S. 174, 179, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988). "[U]nless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." *Id.* (quoting *Northwest Airlines, Inc. v. Transport Workers*, 451 U.S. 77, 94, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981)). While an analysis of § 116 standing alone provides few clues as to whether Congress intended to create a private right of action, the comparison of § 116 to a parallel provision relating to issued patents makes it clear that Congress did not intend the courts to adjudicate inventorship until after a patent has issued.

In addition to providing a process for correcting inventorship on submitted patent applications in 35 U.S.C. § 116, federal patent law provides a process for correcting inventorship of an issued patent. Unlike the process described in § 116, the provision authorizing the correction of issued patents explicitly delineates a role for the courts as well as the Director:

> Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.

The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. *The court before which such matter is called in question* may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

35 U.S.C. § 256 (emphasis added). There can be no doubt from the above passage that Congress intended the courts to have the power to adjudicate inventorship of a patent after the patent has issued.

However, this clear delegation of power to the courts in § 256 casts serious doubt upon the courts' power to adjudicate inventorship under § 116. It is obvious from the parallel language of § 116 and § 256 that Congress drafted them to be complementary. The provisions contain identical requirements of "error" on the application and lack of "deceptive intention" on the part of the nonjoined or misjoined inventor. The language of the two provisions diverges only insofar as the requirements of each provision are substantively different. Given the structural parallels between the two provisions, it can be inferred that Congress' clear delegation of power to the courts in § 256 to correct issued patents and its failure to make any such express delegation in § 116 indicates a conscious choice to bar the courts from correcting errors regarding inventorship until after the patent has issued.

Interpreting § 116 as precluding a private right of action ensures a more rational and coherent process for processing patent applications. With no private right of action under § 116, the PTO may still correct inventorship errors during the application process with the consent of all inventors,[1] or it may reject the application outright if consent cannot be obtained. However, the courts may not interfere with the patent process until after the PTO has rendered a final decision on the precise nature of the patent, if it chooses to issue a patent at all. Such a scheme ensures that potentially long and costly litigation over the question of inventorship will not be mooted by subsequent actions of the PTO. If a private right of action were implied in § 116, a court might grant relief to a plaintiff inventor only to have the PTO determine that the particular claims in the application over which plaintiff claimed inventorship are not patentable. Or the PTO might deny the patent application in its entirety. It seems unlikely that Congress intended to authorize a scheme in which such a waste of scarce judicial resources was possible.

The Court's conclusion is also supported by case law. In *Eli Lilly and Co. v. Aradigm Corp.* the Federal Circuit stated in dicta[2] that § 116 "only grants the Director of the Patent and Trademark Office the authority to take certain actions and plainly does not create a cause of action in the district courts to modify inventorship on pending patent applications." 376 F.3d 1352, 1357 n. 1 (Fed.Cir.2004). Similarly, in *E.I. Du Pont de Nemours & Co. v. Okuley* the Sixth Circuit upheld a district court's dismissal of an inventorship claim under § 116 for lack of jurisdiction. 344

---

1. *See* 37 C.F.R. § 1.48 (requiring an oath or declaration by all actual inventors that the corrected application correctly states the original or first inventors); *see also Iowa State University Research Foundation v. Sperry Rand Corp.*, 444 F.2d 406, 408 n. 1 (4th Cir.1971).

2. The court's statement was dicta because it found that the district court had constructively converted plaintiff's claim to a § 256 claim when the patent in question was issued during the course of the litigation. *See id.*

F.3d 578, 584 (6th Cir.2003), *cert. denied,* 541 U.S. 1027, 124 S.Ct. 2071, 158 L.Ed.2d 642 (2004). The *Okuley* court compared the language of § 116 and § 256 and concluded that

> Congress intended to draw a distinction between patent applications and issued patents. While the patent is still in the process of gestation, it is solely within the authority of the Director. As soon as the patent actually comes into existence, the federal courts are empowered to correct any error that the Director may have committed.

*Id.* The court noted the possibility of "premature" and "futile" litigation if putative inventors were allowed to sue prior to the approval of the patent application. *Id.*

Plaintiffs point out that a handful of district courts, including one in the District of Massachusetts, have allowed inventorship claims under § 116 to go forward. *See Heineken Technical Services v. Darby,* 103 F.Supp.2d 476 (D.Mass.2000); *Post Performance, LLC v. Renaissance Imports, Inc.,* 333 F.Supp.2d 834 (E.D.Mo. 2004) (adopting the reasoning of *Heineken* ). The *Heineken* case employed the test for jurisdiction under 28 U.S.C. § 1338(a) employed by the Supreme Court in *Christianson,* 486 U.S. at 808–09, 108 S.Ct. 2166, to determine that the plaintiffs' request for a declaratory judgment of inventorship "implicates federal patent law provisions covering inventorship on patent applications under 35 U.S.C. § 116." *Heineken,* 103 F.Supp.2d at 478. The *Heineken* court did not discuss whether § 116 creates a private right of action for non-joined inventors.

■ Without a private right of action under § 116, Plaintiffs' claims must fail

even if this Court has jurisdiction under the *Christianson* analysis.[3] The statute establishing federal patent law jurisdiction, like the statute establishing federal question jurisdiction, does not create causes of action. *See Mead Corp. v. United States,* 490 F.Supp. 405, 407 (D.D.C.1980), *aff'd,* 652 F.2d 1050 (D.C.Cir.1981). It merely allows federal courts to hear causes of action independently created by Congress in federal patent law. *Id.* Since the Court chooses to follow the Federal Circuit and the Sixth Circuit in holding that there is no implied private right of action in § 116, the fact that 28 U.S.C. § 1338 would provide this Court with jurisdiction to hear such a cause of action, were it to exist, cannot save Plaintiffs' claims. The fact that Plaintiffs request declaratory judgment of inventorship rather than relief directly under § 116 does not alter this analysis. *See MCV, Inc. v. King–Seeley Thermos Co.,* 870 F.2d 1568, 1571 (Fed. Cir.1989) (noting that plaintiff erred in bringing a claim for correction of inventorship on an issued patent as a declaratory judgment action rather than under 35 U.S.C. § 256).

■ One final issue remains in this case, although it was not pressed by either of the parties. Defendant moved to dismiss this claim under Federal Rule of Civil Procedure 12(b)(1) for lack of federal subject matter jurisdiction. Although many of the cases on this issue have couched their analysis in terms of jurisdiction under 28 U.S.C. § 1338, the core of Defendant's argument is that the provision of federal patent law at issue does not provide Plaintiffs with a cause of action for which relief can be granted. In *Steel Co. v. Citizens for a Better Environment,* a case over the scope of the citizen-suit pro-

---

**3.** It is unclear whether the *Heineken* court implicitly determined that a private right of action exists in § 116 or felt that *Christianson*

made it unnecessary to find such a private right of action. Whichever the case, the Court declines to follow that decision.

vision in the Emergency Planning and Community Right–To–Know Act of 1986, the Supreme Court explained that disputes over the interpretation of federal or constitutional law generally go to the merits of a claim rather than jurisdiction:

"[T]he absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction .... [T]he District Court has jurisdiction if the right of petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another, unless the claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous"

523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (citations omitted). Under this standard, dismissal under Rule 12(b)(1) is inappropriate when the case hinges upon an arguable interpretation of federal law. *See Chiplin Enterprises, Inc. v. City of Lebanon*, 712 F.2d 1524, 1528 (1st Cir.1983) (holding that dismissal should occur under Rule 12(b)(6) rather than Rule 12(b)(1) when a party's "right to recover depends on construction of the Constitution and laws of the United States, and its claim is not so patently frivolous as not to involve a federal controversy").

Since the issue of whether § 116 contains a private right of action depends upon construction of federal law and Plaintiffs' argument that such a right exists is not wholly insubstantial and frivolous, this Court does have jurisdiction over Plaintiffs' claim. Indeed, "[i]t has long been recognized that where a plaintiff asserts that a private right of action is implied from federal law, federal courts do have the requisite subject matter jurisdiction to determine whether such a federal remedy exists." *Arroyo–Torres v. Ponce Federal Bank, F.B.S.*, 918 F.2d 276, 280 (1st Cir.

1990) (citation omitted); *see also Thompson v. Thompson*, 798 F.2d 1547, 1550 (9th Cir.1986), *aff'd*, 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988) (holding that the District Court's dismissal of claims under the Parental Kidnapping Prevention Act because the statute does not contain a private right of action should have come under Rule 12(b)(6), not Rule 12(b)(1)); *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633–40, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (applying Rule 12(b)(6) to decide whether a private right of action exists). *But see Massachusetts Fed'n of Nursing Homes v. Massachusetts*, 791 F.Supp. 899, 900–901 (D.Mass.1992) (applying Rule 12(b)(1) to decide whether a private right of action exists). Given the Court's finding that § 116 does not provide Plaintiffs with a private right of action, Plaintiffs' claim must still be dismissed. However, the Court dismisses it for failure to state a claim under Rule 12(b)(6) rather than for lack of subject matter jurisdiction under Rule 12(b)(1).

Plaintiffs' remaining claim for breach of fiduciary duty is a state law claim brought under the doctrine of pendent jurisdiction. *See* 28 U.S.C. § 1367; *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Since the Court has dismissed the only claim over which it has original jurisdiction, it declines to exercise supplemental jurisdiction over Plaintiffs' state law claim. *See* 28 U.S.C. § 1367(c).

For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss and hereby ORDERS that Count I be DISMISSED WITH PREJUDICE and Count II be DISMISSED WITHOUT PREJUDICE.

SO ORDERED.