**Mark H. BERENS, Plaintiff,**

v.

**Eugene LUDWIG, Comptroller of the Currency, and Marquette Bank, N.A., as successor in interest to Marquette Bank of Shakopee, N.A., Defendants.**

**No. 96 C 3534.**

United States District Court,
N.D. Illinois,
Eastern Division.

May 22, 1997.

---

Richard M. Carbonara, Mark H. Berens, Altheimer & Gray, Chicago, IL, for Plaintiff.

James Michael Kuhn, U.S. Attorney's Office, Chicago, IL, Kenneth J. Lennon, Office of the Comptroller of Currency, Washington, DC, for Defendants.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is plaintiff Mark H. Berens' motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e). For the reasons that follow, the court denies Berens' motion.

## I. BACKGROUND

The court fully set out the facts underlying Berens' cause of action in its memorandum opinion and order, dated February 13, 1997, granting summary judgment against Berens and for defendant Comptroller of the Currency. See Berens v. Ludwig, 953 F.Supp. 249 (N.D.Ill.1997). All of those facts need not be repeated here, but the court will summarize the relevant ones and relate the facts not at issue in the first opinion.

Berens owned 33 shares of stock in Marquette Bank Shakopee, N.A. ("Shakopee"), making him a minority shareholder in Shakopee. On January 1, 1995, Marquette Bancshares, Inc. ("MBI"), Shakopee's majority shareholder, consolidated Shakopee with 10 other banks and received 100 percent of the stock of the consolidated institution, defendant Marquette Bank, N.A. ("Marquette Bank"). MBI had offered Berens $12,071 per share of stock that he owned, but Berens felt that this price was too low.

Accordingly, Berens sought an appraisal of his stock by the Comptroller of the Currency ("Comptroller") pursuant to 12 U.S.C. § 215(d), which allows any interested party in a bank consolidation to request that the Comptroller appraise a dissenting shareholder's stock. The Comptroller's appraisal is final and binding on all parties. After receiving evidence from both Berens and Marquette Bank with respect to the value of the stock, the Comptroller considered the parties' materials and conducted his own analysis of the stock's value.

In March 1996, the Comptroller determined that Berens' stock was worth $13,033.52 per share as of January 1, 1995. On May 15, 1996, Marquette Bank issued a check to Berens for $430,106.16, the total value of Berens' shares pursuant to the

Comptroller's appraisal. Berens believed his stock was worth about $16,700 per share, however. Consequently, he sued the Comptroller pursuant to the Administrative Procedure Act, 5 U.S.C. § 702, alleging that the Comptroller's appraisal was conducted in an arbitrary and capricious manner, and asking the court to set aside the appraisal. He also sued Marquette Bank, seeking primarily to have Marquette Bank pay Berens interest from January 1, 1995, on the value of his shares of stock.

On November 8, 1996, Berens and Marquette Bank entered into an agreed order and stipulation, which provided as follows:

1. The Bank shall be bound by the value ascribed to its stock at issue in this cause by the adjudication of this case, whether entered by this Court by way of judgment or settlement or established by a reappraisal of the stock by the Office of the Comptroller of the Currency ("OCC");

2. The Bank shall be obligated to compensate Berens for the value of his stock on the basis described in paragraph 1. Such compensation shall be due to Berens on or before the tenth day following (1) entry of judgment fixing the value of the Bank stock, or (2) if the Court orders the OCC to perform a reappraisal of the stock, the delivery of such reappraisal;

3. The compensation due to Berens by virtue of the foregoing shall credit the Bank for funds already tendered to Berens by the Bank for Berens' Bank stock, which funds total $430,106.16. Berens shall be entitled to cash the check tendered to him by the Bank for this purpose, and such acceptance of those funds by Berens shall not be construed in any respect as an accord and satisfaction or in any wise as a release of Berens' continuing claim for greater compensation for his Bank stock....

4. On the basis of the foregoing provisions, the Bank shall be and hereby is dismissed from this action with prejudice, subject to its continuing obligations set forth above....

(Def.'s Mem. in Opp. to Pl.'s Mot. to Alter or Amend J. Ex. A.)

On February 13, 1997, the court granted the Comptroller's motion for summary judgment, finding that the Comptroller's appraisal was reasonable and entering judgment for the Comptroller and against Berens. The consequence of this ruling was that Marquette Bank, in May 1996, paid Berens the correct amount of money for his shares of stock, and so was not required to compensate Berens further for his stock.

On February 28, 1997, Berens moved to alter or amend the judgment to provide for interest on the amount that Marquette Bank paid Berens for his stock. Berens represented to this court that his proposed order providing for prejudgment interest was an agreed order, so the court entered it. Actually, only Berens and the Comptroller agreed to the order. Marquette Bank, to whom the order was directed, was not aware of the order until after it was entered. When the court became aware of this, the court vacated the order awarding interest to Berens, allowed Marquette Bank to respond to Berens' motion to alter or amend the judgment, and now addresses the motion on its merits.

## II. *DISCUSSION*

Berens contends that he should be awarded interest on the value of his shares of stock from January 1, 1995, when the bank consolidation occurred, through November 8, 1996, when Berens and Marquette Bank entered an agreed order and stipulation dismissing Marquette Bank from Berens' lawsuit. Marquette Bank counters that Berens is not entitled to any interest at all.

### A. *Dates of interest accrual*

As a preliminary matter, the court notes that Berens somewhat disingenuously claims that he was not entitled to cash the check that he received from Marquette Bank in May 1996 until November 8, 1996, when Berens and Marquette Bank entered the agreed order and stipulation. Though Marquette Bank issued the check on May 15, 1996, Berens claims in his motion that Marquette Bank conditioned his acceptance of the check as full and complete satisfaction of any claim by Berens against Marquette. (*See* Pl.'s Mot. to Alter or Amend J. at 2–3.) Thus,

Berens implies in his motion that Marquette Bank effectively prevented him from using his money until November 8, 1996.

■ In its response to Berens' motion, Marquette Bank makes clear that it did not impose any conditions on Berens' acceptance of the check, and that if Berens did not cash the check, it was his own choice not to do so. (*See* Mem. in Opp. to Pl.'s Mot. to Alter or Amend J. at 11; *id.* Ex. C.) Berens essentially concedes that this is true. (*See* Pl.'s Reply in Supp. of Mot. to Alter or Amend J. at 3.) Moreover, the court notes that as of May 15, 1997, Berens had not yet filed his lawsuit against Marquette Bank. If Berens anticipated bringing claims against Marquette Bank and feared waiving them, and for that reason did not want to accept payment from Marquette Bank, it still was his decision not to cash Marquette Bank's check.

Berens had the proper value of his shares by May 15, 1996. Though he held the check without cashing it, he did so of his own volition. Consequently, the court finds that if Berens were entitled to any interest at all on the value of his shares, it would be interest only from January 1, 1995, through May 15, 1996.

## B. *Prejudgment interest under federal common law*

Berens contends that he is entitled to interest on the value of his shares pursuant to the "well-established [f]ederal common law right to prejudgment interest." (Pl.'s Mot. to Alter or Amend J. at 3.) Berens argues that because Marquette Bank effectively had use of $430,106.16 of Berens' money from January 1, 1995, through November 8, 1996, Marquette Bank must pay interest on that amount in order to compensate Berens completely.

Berens contends that prejudgment interest is presumptively available to aggrieved plaintiffs in federal court. He is correct that aggrieved plaintiffs who win judgments on their claims in federal court typically are entitled to interest on the judgment to compensate them fully for being deprived of their money from the time of the wrong to the time of the judgment. *See, e.g., Gorenstein Enterprises, Inc. v. Quality Care—USA, Inc.,* 874 F.2d 431, 436 (7th Cir.1989) (citing numerous cases awarding prejudgment interest). However, prejudgment interest typically is awarded only to plaintiffs who prevail on their claims that they were victims of violations of federal law. *See Gorenstein,* 874 F.2d at 436 ("federal common law authorizes the award of [prejudgment] interest in appropriate cases to victims of violations of federal law").

■ In this case, Berens did not prevail on his cause of action. While Berens may have succeeded in obtaining a higher appraisal of his stock by the Comptroller than Marquette Bank had offered, that success was not part of the litigation in this court, but rather occurred prior to the litigation. In fact, Berens had not yet filed his lawsuit at the time Marquette Bank paid him the value of his shares as determined by the Comptroller. Berens lost his case in this court when the court found that the Comptroller's appraisal of Berens' shares of stock was reasonable, that is, that the Comptroller complied with the applicable federal law in appraising Berens' stock. That ruling meant that Berens was fully compensated by Marquette Bank at the time he filed his lawsuit. Thus, Berens is neither an aggrieved plaintiff nor a victim of a violation of federal law to whom prejudgment interest typically is awarded.

Berens also contends that public policy compels an award of prejudgment interest to him. Berens notes that section 215 of the National Banking Act, 12 U.S.C. § 215, is intended to prevent majority shareholders from forcing out minority shareholders at less than fair value for their shares. Section 215 accomplishes its goal by providing the procedure by which the Comptroller can appraise a minority shareholder's stock to determine the fair value of the shares. Berens notes that the appraisal process takes a significant amount of time. Thus, he contends that if the court refuses to award interest during the appraisal period, the minority shareholder will receive less than fair value for his shares of stock, because the minority shareholder will have lost the time value of his money from the time of the merger date until the time the bank pays the fair value of

the shares as determined by the Comptroller. Concomitantly, the bank will receive a windfall, because for acting improperly, the bank will have received an interest-free loan on the value of the shares.

Berens' argument makes a good deal of sense. However, the court notes that Congress, which at least theoretically represents the public and presumably considers public policy in enacting legislation, did not provide for interest on the Comptroller-determined value of shares during the appraisal period. *See* generally 12 U.S.C. § 215. Other courts that have addressed the issue have held that a minority shareholder is not entitled to interest on the value of his shares under section 215 or the Constitution of the United States. *See Yabsley v. C.T. Conover,* 644 F.Supp. 689, 697 (N.D.Ill.1986); *Boone v. Carlsbad Bancorp., Inc.,* 972 F.2d 1545, 1552–53 (10th Cir.1992); *Keeffe v. Citizens & N. Bank,* 808 F.2d 246, 252 (3d Cir.1986). Furthermore, the court has not found and Berens has not pointed to any cases awarding any type of interest, under any authority, to a plaintiff seeking relief under section 215.

Berens contends that "[i]t would be perverse indeed if the court were to permit a statute designed to protect minority shareholder interests to operate in a manner that instead penalizes them a year or more worth of interest for seeking redress." (Pl.'s Mot. to Alter or Amend J. at 6.) The court agrees that the lack of an interest provision in section 215 leads to seemingly inequitable outcomes. Yet, this is the outcome dictated by the statutory scheme, not by the court, and it is not for the court to decide whether Congress should have provided for interest during the appraisal period. *See Keeffe,* 808 F.2d at 252. " 'If the ... statute is to be amended ..., Congress is the body [that] must act to do so....' " *Id.* (quoting *Northside Iron and Metal Co. v. Dobson and Johnson, Inc.,* 480 F.2d 798, 800 (5th Cir. 1973)).

Moreover, the court notes that if a minority shareholder who had won a higher appraisal by the Comptroller did not file a subsequent lawsuit in federal court, there would be no question that the minority shareholder would not be entitled to interest on the appraised value of his shares of stock, since section 215 does not provide for such interest. At the time Marquette Bank paid Berens the value of his stock, Berens was in the position of the minority shareholder who had not filed a lawsuit, and therefore was not entitled to interest under section 215.

Berens subsequently filed a lawsuit, which he lost. As the court found above, a losing plaintiff who was not aggrieved and who was not the victim of a violation of federal law is not entitled to prejudgment interest. In fact, there was no judgment for Berens, since the court granted summary judgment against him and Marquette Bank already had compensated him for the value of his shares. If there was no judgment for Berens in his lawsuit, there is nothing on which to base prejudgment interest.

In sum, in the absence of any statutory or common law authority allowing Berens to collect interest on the value of his shares for the time period from the date of merger until Berens received the value of his shares, the court finds that Berens is not entitled to what he calls prejudgment interest on the value of his shares.

## C. *Agreed order dismissing Berens' claims against Marquette Bank*

In addition to the foregoing, Marquette Bank also argues that the November 8, 1996, agreed order and stipulation dismissed Berens' claims against it with prejudice and limited Berens' recovery to the "value" of his stock, but did not mention interest, and therefore that Berens cannot now attempt to collect interest. The court agrees.

Berens acknowledges that his sole reason for suing Marquette Bank was to obtain interest on the amount that Marquette Bank owed him for the shares. (*See* Pl.'s Reply in Supp. of Mot. to Alter or Amend J. at 8.) When Berens entered the agreed order and stipulation with Marquette Bank, he effectively settled the case and dismissed the claims against Marquette Bank, except to the extent that the court might adjudicate a different appraised value for the shares, which it ultimately did not. The agreed order did not address the only dispute Berens admit-

tedly had with Marquette Bank at that time—interest on the value of the shares. Thus, with the November 8, 1996, agreed order and stipulation, Berens dismissed his claim for interest.

Berens tries to overcome his failure to provide for interest in the November 8, 1996, agreed order by claiming that the "value ascribed" to the stock was intended to include prejudgment interest. Berens contends that Marquette Bank is urging a narrow interpretation of the term "value" to exclude interest to support its claim that the sole intent of the parties in entering the agreed order was to hold Marquette Bank to the ultimate valuation of the shares, exclusive of any interest. Berens argues that even if the court accepts that this was Marquette Bank's belief, "the Court should not read the Bank's subjective belief into the document." (Pl.'s Reply in Supp. of Mot. to Alter or Amend J. at 10.) To the contrary, the document actually reflects Marquette Bank's belief because it says nothing about interest. It is Berens who asks the court to read his subjective belief into the document.

Moreover, Berens' contention that the term "value" encompasses interest is implausible. Throughout briefing on the Comptroller's motion for summary judgment, the parties spoke of the value of Marquette Bank stock in terms of how much each share was worth. The materials in the administrative record used "value" in the same context. The appraised value of each share, according to the Comptroller, was $13,033.52; that is, each share was worth $13,033.52. The Comptroller's appraisal of Marquette Bank's stock was based on other measures of value—adjusted book, market, and investment value—designed to determine the worth of a share of stock. None of these discussions included any type of interest as an element of value. See also Yabsley, 644 F.Supp. at 697 (the term "value" as used in section 215a does not encompass interest).

In addition, in his complaint, Berens referred to the value of his shares as what his shares were worth; that is, what the price per share should have been. Also in his complaint, Berens distinguished value from interest. In asking for relief, Berens asked

that the court find that the value of Berens' stock was higher than the Comptroller appraised it to be; direct Marquette Bank to pay interest on the value of the shares; and award Berens costs and attorneys' fees. (See Compl. at 5–6.) Thus, Berens himself recognized that value is different from and not inclusive of interest.

Furthermore, the fact that Berens mentioned interest explicitly in his complaint but failed to account for it in the November 8, 1996, agreed order indicates that interest was not meant to be included in the settlement between Berens and Marquette Bank. See Delta Mining Corp. v. Big Rivers Elec. Corp., 18 F.3d 1398, 1405 (7th Cir.1994) (citation omitted) (following the principle of exclusio unius est exclusio alterius, meaning that "when certain matters are mentioned in a contract, other similar matters not mentioned were intended to be excluded").

The court is not in the position to second-guess what the parties intended by entering into their agreed order, particularly when the agreed order is not ambiguous. See Brekken v. Reader's Digest Special Products, Inc., 353 F.2d 505, 506 (7th Cir.1965) (courts "cannot rewrite the contracts" that parties have made). Accordingly, the court agrees with Marquette Bank that Berens abandoned his claim for interest on the value of his shares by entering into the November 8, 1996, agreed order settling and dismissing with prejudice his claims against Marquette Bank without explicitly providing for an interest award.

Because Berens has not shown that he is entitled, by statute or common law, to an award of prejudgment interest, and because Berens dismissed with prejudice his claim against Marquette Bank for interest on the value of his shares, Berens is not entitled to interest on the value of his shares.

### III.  CONCLUSION

For the foregoing reasons, the court denies plaintiff Mark H. Berens' motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e).